**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARY ELLEN MORGAN, on behalf of herself and all others similarly situated, | ) ) ) Case No. 21-cv-00044 |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE ALLSTATE CORPORATION; THE 401(K) COMMITTEE OF THE ALLSTATE 401(K) SAVINGS PLAN; THE INVESTMENT COMMITTEE OF THE ALLSTATE 401(K) SAVINGS PLAN; THE ADMINISTRATIVE COMMITTEE OF THE ALLSTATE 401(K) SAVINGS PLAN; AND DOES 1-30. | ) ) ) ) ) ) ) ) CLASS ACTION |
| Defendants. | ) ) ) |

**CLASS COMPLAINT FOR DAMAGES**

## I.    INTRODUCTION

1.      Plaintiff Mary Ellen Morgan brings this action under 29 U.S.C. §1132(a)(2) and (3) individually on behalf of the Plan and two classes of participants and beneficiaries of the Allstate 401(k) Savings Plan (the "Plan") for breach of fiduciary duty and prohibited transactions under the Employee Retirement Income Security Act, 29 U.S.C. §§1001-1461 ("ERISA"). Plaintiff seeks all damages from January 4, 2015 through the date of judgment (the "Class Period") resulting from Defendants' breach of fiduciary duty and prohibited transactions, as well as any and all other equitable or remedial relief for the Plan as the Court may deem appropriate.

2.      Defendants, the Allstate Corporation, the 401(k) Committee of the Allstate 401(k) Savings Plan and its members, the Investment Committee of the Allstate 401(k) Savings Plan, and the Administrative Committee of the Allstate 401(k) Savings Plan, and its members (collectively,

the "Allstate Defendants") are fiduciaries to the Allstate 401(k) Savings Plan (the "Plan"). They have the exclusive authority to select the Plan's investment options. The Plan's participants, who are mostly current and former Allstate employees, can invest their retirement savings in any of the funds that Allstate Defendants select for the Plan.

3. As fiduciaries, the Allstate Defendants must prudently curate the Plan's investment options. They must regularly monitor Plan investments and remove ones that become imprudent.

4. Throughout the Class Period, Allstate Defendants breached these fiduciary duties. In 2011, and again in 2017, they loaded the plan with a suite of poorly performing funds called the Northern Trust Focus Target Retirement Trusts ("Northern Trust Funds" or "the Funds"). Allstate Defendants kept these Funds throughout the Class Period despite their continued underperformance.

5. The Northern Trust Funds are "target date funds"—they are designed to achieve certain investment results based on an investor's anticipated retirement date (the "target date"). Over the past decade, target date funds have become increasingly popular retirement savings options. According to the *Wall Street Journal*, as of the end of 2016, target date funds held 21% of all 401(k) assets in the United States. In 2018, at least $734 billion of retirement savings were invested in target date funds. Given their popularity, retirement plan fiduciaries have hundreds of different target date funds to choose from when selecting target date options for their plans.

6. From the start, the Allstate Defendants mishandled the process of picking the Northern Trust Funds. Despite a market teeming with better-performing alternatives, Allstate selected the Northern Trust Funds in 2011. At the time, the Northern Trust Funds were in their nascent stage, with only a one-year investment track record, and a poor one at that.

7.     From 2011 through 2014, the time leading up to the start of the relevant Class Period, the Northern Trust Funds significantly underperformed both their benchmark indexes and comparable target date funds. Predictably, the Northern Trust Funds continued underperforming from 2015 through the present.  Throughout their first ten years in existence, virtually all of these Northern Trust Funds performed in the 70th to 90th percentile—worse than 70 to 90 percent of their peer funds.

8.     Still, Allstate failed to remove the Funds. In fact, in 2017 Allstate actually added to the Northern Trust Funds' lineup. Allstate has even selected the Northern Trust Funds as the Plan's default investment option, meaning the Plan automatically invests participants' retirement savings in a Northern Trust Fund if the participant does not select another investment.

9.     The Northern Trust Funds now collectively hold over $700 million in Plan assets.

10.     Notably, the Northern Trust Funds are managed by Northern Trust Investments, Inc., which is a wholly owned subsidiary of the Plan's Trustee, the Northern Trust Corporation. Accordingly, the Northern Trust Corporation derives two separate streams of income from the Plan: (1) compensation for its services as Plan Trustee, and (2) fees associated with the Northern Trust Funds.

11.     Allstate's imprudent decision to retain the Northern Trust Funds has had a large, tangible impact on participants' retirement accounts. Based on an analysis of data compiled by Morningstar, Inc.[1], the Plan has lost upwards of $70 million in retirement savings since 2015 because of Allstate's decision to retain the Northern Trust Funds instead of removing them.

---

[1] Morningstar, Inc. is a leading provider of independent investment research products (e.g., data and research insights on managed investment products, publicly listed companies, and private capital markets) for individual investors, financial advisors, asset managers, retirement plan providers and sponsors, and institutional investors in the private capital markets in North America, Europe, Australia, and Asia.

12.     The Northern Trust Funds have also impaired the Plan's overall performance. According to Brightscope[2], the average Plan participant may earn $98,193 less in retirement savings than employees in top-rated retirement plans of a similar size. The $98,193 loss translates to an additional twelve (12) years of work per participant.

13.     In addition, as fiduciaries to the Plan, Allstate arranged for two outside investment advisers—Financial Engines and Alight Financial Advisors—to provide investment advice directly to Plan participants for a fee. In doing so, Allstate Defendants are obligated to act for the exclusive benefit of the Plan's participants and beneficiaries, to assure that Plan expenses are reasonable, and to ensure Plan's investments are prudent.

14.     Instead, Allstate neglected these sacrosanct duties. It allowed participants to pay unreasonably high fees to the Plan's "investment advisers," first Financial Engines and later Alight Financial Advisors. It also constructed a plan with far too many layers of fees and turned a blind eye to a kickback scheme between Financial Engines and the Plan recordkeeper Aon Hewitt.

15.     Plaintiff does not have knowledge of all material facts (including, but not limited to, comparisons of the Plan's investment performance relative to other available investment alternatives) necessary to understand that the Allstate Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before filing this Complaint. Further, Plaintiff does not have actual knowledge of the specifics of the Allstate Defendants' decision-making processes with respect to the Plan, including the Allstate Defendants' processes for monitoring and removing Plan investments, because this information is

---

[2] Brightscope is a leading financial information and technology company that prepares retirement plan ratings and investment analytics to participants, plan sponsors and asset managers in all 50 states. Plaintiffs accessed this data from Brightscope's website on July 3, 2019.

solely within the possession of the Allstate Defendants prior to discovery. For purposes of this Complaint, Plaintiff has drawn reasonable inferences regarding these processes based upon *inter alia* the facts set forth herein.

## II.  PARTIES

### A. Plaintiff

16.     Mary Ellen Morgan was a participant in the Plan during the Class Period.  During the Class Period, Plaintiff Morgan suffered harm by investing in the Northern Trust 2015 Focus Fund and the Northern Trust 2020 Focus Fund.

### B. Defendants

17.     The Allstate Corp., a Delaware corporation headquartered in Northbrook, Illinois, is one of the largest insurance companies in the United States.  It is the Plan's sponsor and one of the Plan's fiduciaries.

18.     The 401(k) Committee of the Allstate 401(k) Savings Plan (the "401(k) Committee") is responsible for appointing and monitoring the Investment Committee and the Administrative Committee of the Allstate 401(k) Savings Plan and its members. Current and former members of the 401(k) Committee are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) because they exercised discretionary authority or discretionary control over the management of the Plan.

19.     The Investment Committee of the Allstate 401(k) Savings Plan ("Investment Committee) is responsible for selecting and monitoring the investment options available on the Plan. The Investment Committee has the sole right under the Plan to choose investment managers and to delegate to any such investment manager the power and authority to manage plan assets. Current and former members of the Investment Committee are fiduciaries of the Plan under 29

U.S.C. § 1002(21)(A) because they exercised discretionary authority or discretionary control respecting management of the Plan.

20.     The Administrative Committee administers the Plan. The Administrative Committee has the discretion to establish and carry out all the rules necessary to operate the Plan and make decisions regarding the interpretation and application of Plan provisions, including the discretions to make factual determinations and remedy any ambiguities, inconsistencies, or omissions.

21.     Because Plaintiff is currently unaware of the identities of the individual members of the 401(k) Committee, the Investment Committee, and the Administrative Committee those individuals are collectively named as Defendants Does 1-30. Plaintiff will substitute the real names of the Does when they become known to Plaintiff. To the extent the 401(k) Committee or the Investment Committee delegated any of its fiduciary functions to another person or entity, the nature and extent of which has not been disclosed to Plaintiff, the person or entity to which the function was delegated is also a fiduciary under 29 U.S.C. § 1002(21)(A), and also alleged to be a Doe Defendant.

## III.   JURISDICTION AND VENUE

22.     This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2) and (3).

23.     This District and Division are the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. § 1391(b) because they are the District and Division in which the subject Plan is administered and where at least one of the alleged breaches took place. They are also the District and Division in which Defendant Allstate Corp. resides.

## IV.    ERISA'S FIDUCIARY STANDARDS

### A. Fiduciary Duties of Prudence and Loyalty

24.    ERISA imposes strict fiduciary duties of prudence and loyalty upon the Allstate Defendants as fiduciaries of the Plan. 29 U.S.C. § 1104(a). These duties apply to all fiduciary acts, including the Allstate Defendants' retention of investment options for the Plan.

25.    ERISA's duty of prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B).  Accordingly, fiduciaries must vigorously and independently investigate each of the Plan's investment option with the skill of a prudent investor.

26.    As part of its fiduciary duty, Allstate "has a continuing duty to monitor [Plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015). If an investment is imprudent, Allstate "must dispose of it within a reasonable time." *Id.* at 1829. (citation omitted).

27.    ERISA also prohibits certain transactions between the Plan and any party in interest. 29 U.S.C. § 1106. Engaging in any of these prohibited transactions constitutes a *per se* violation of ERISA.  29 U.S.C. §1106(a)(1) states:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –
>
> > (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
> >
> > (B) lending of money or other extension of credit between the plan and a party in interest;
> >
> > (C) furnishing of goods, services, or facilities between the plan and party in interest;

7

(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

28.     A party in interest includes, in relevant part, any plan fiduciary, including the plan administrator, trustee, officer or custodian, any plan services provider, the employer, a relative of any of the above, and certain persons with ownership or leadership roles in any of the above. 29 U.S.C. § 1002(14).

## B. Fiduciary Liability Under ERISA

29.     Under 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

## C. Co-Fiduciary Liability

30.     ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary if:

> (1) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; [or]

> (2) by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

> (3) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

31.     Each of the Allstate Defendants is subject to co-fiduciary liability under 29 U.S.C. § 1105(a)(1)–(3) because they enabled other fiduciaries to commit breaches of fiduciary duties through their appointment powers, failed to comply with 29 U.S.C. § 1104(a)(1) in the administration of their duties, and failed to remedy other fiduciaries' breaches of their duties, despite having knowledge of the breaches.

## V.     THE PLAN

32.     The Plan consists of a profit-sharing and stock bonus plan that includes a "qualified cash or deferred arrangement" as described in Section 401(k) of the Internal Revenue Code, I.R.C. § 401(k) (1986) (hereinafter denoted as "the Code") and is subject to the provisions of ERISA. The Plan is established and maintained under a written document as required by 29 U.S.C. § 1102(a). Allstate is the sponsor of the Plan. The Retirement Plan Committee is the Plan Administrator. The Northern Trust Company serves as the Plan's trustee and as the custodian of the Plan's assets.

33.     The Plan provides for retirement income for over 44,000 participants, comprised of Allstate employees, former employees, and their beneficiaries. A participant's retirement account balance primarily depends on contributions made by each employee, Allstate's matching contributions, and the performance of investment options net of fees and expenses. The Allstate Defendants exclusively control the selection and retention of the Plan's investment options.

34.     The Plan has approximately $6 billion in assets under management. The Plan's assets include a unitized funds that invests in Allstate stock, commingled investment vehicles (e.g., collective investment trusts), and insurance contracts.

35.    Based on publicly available Plan documents, Plan participants had invested over $700 million in the Northern Trust Funds as of December 31, 2019. In 2019, the Plan identified the following Northern Trust Funds along with the amount of Plan assets invested in each fund:

| Plan Option | Value |
|---|---|
| **Northern Trust Focus 2010 Fund** | **$5,548,990** |
| Northern Trust Focus 2015 Fund | $21,517,548 |
| **Northern Trust Focus 2020 Fund** | **$101,182,290** |
| Northern Trust Focus 2025 Fund | $145,734,031 |
| **Northern Trust Focus 2030 Fund** | **$125,960,360** |
| Northern Trust Focus 2035 Fund | $98,270,534 |
| **Northern Trust Focus 2040 Fund** | **$80,949,237** |
| Northern Trust Focus 2045 Fund | $63,179,898 |
| **Northern Trust Focus 2050 Fund** | **$47,595,153** |
| Northern Trust Focus 2055 Fund | $50,074,951 |
| **Northern Trust Focus 2060 Fund** | **$4,887,190** |

36.    With approximately $6 billion in assets, the Plan has tremendous leverage to demand and receive superior investment products and services. Unfortunately, Allstate did not effectively use that leverage to identify and select prudent target date options for Plan participants.

## VI.    ALLSTATE'S BREACHES OF FIDUCIARY DUTY

### A.    Allstate Imprudently Retained Poorly Performing Northern Trust Target Date Funds

37.    As Plan fiduciary, Allstate was responsible for monitoring the Plan's investment options. Allstate failed to prudently perform this function. Allstate selected and then retained a suite of target date funds—the Northern Trust Funds—that suffered chronic poor performance.

Allstate failed to remove the Funds from the Plan despite abysmal investment performance that spans a decade.

38.     Allstate began offering the Northern Trust Funds to Plan participants in 2011. During the Class Period, the Northern Trust Funds have had target retirement dates ranging from 2010 to 2060.[3] The Funds are the only target date options on the Plan. Participants who want to invest in a target date strategy have no choices other than the Northern Trust Funds.

39.     Allstate also selected the Northern Trust Funds as the Plan's default investment options. If participants do not make investment fund elections, the Plan automatically invests their contributions, along with any matching contributions and/or earnings, in one of the Northern Trust Funds based on their age.

40.     Retirement plan fiduciaries, like Allstate, typically offer target date options through a suite of funds bundled by a single investment adviser (here, Northern Trust). Since Allstate offers the Funds collectively as a suite, Allstate uses the same selection and monitoring process for each of the Northern Trust Funds.

41.     Allstate's selection and monitoring process for the Northern Trust Funds has been deficient. When Allstate added the Northern Trust Funds to the Plan in 2011, they were untested and lacked a significant track record. In fact, the Northern Trust Funds' one-year track record that existed at the time was not promising.

42.     Without the benefit of an adequate track record, Allstate could not have undertaken a rigorous fiduciary analysis from which to formulate a reasonable expectation of future returns or the Funds' adherence to the Plan's investment objectives and policies. Any prudent fiduciary that followed a rigorous process would have compared the untested Northern Trust Funds with better

_____

[3] Allstate added the Northern Trust Focus 2060 Fund to the Plan sometime in 2017.

performing and more established investment options available on the market. For instance, Vanguard, Fidelity, and T. Rowe Price all offered target retirement date investment strategies with significantly better and more established track records than the untested Northern Trust Funds. Instead, Allstate chose to gamble blindly with participants' money in the hopes that Northern Trust would deliver.

43.     Allstate's decision to select the Northern Trust Funds netted $250 million in investments from participants in 2011. Unfortunately, the decision also saddled participants' retirement accounts with bad investment performance. From 2011 through 2014, the first four years that the Plan offered the Northern Trust Funds, the Northern Trust Funds' poor performance cost the Plan and its participants over $25 million in lost retirement savings.

44.     Predictably, from 2015 to the present, the relative investment performance of each of the Northern Trust Funds has continued their downward spiral.

45.     The Northern Trust Funds consistently underperformed the Morgan Stanley All Country World Investable Market Index (MSCI ACWI IMI Index), a broad-based, all equity index that Allstate identifies as the benchmark for these funds.[4] The Northern Trust Funds also underperformed other broad-based indexes, including Standard & Poor's Target Date Index and

---

[4] Northern Trust also utilizes a custom Northern Trust benchmark that it maintains. However, the DOL rejects the use of custom benchmarks on the grounds that investment performance information could fall prey to "manipulation" and misleading presentations by a fund's investment adviser, underwriter or affiliate. To avoid manipulation, the DOL mandated that a benchmark should be a "broad-based securities market index," and that it may not be administered by an affiliate of the investment issuer, its investment adviser, or a principal underwriter, unless it is widely recognized and used. 29 C.F.R. § 2550.404a-5. Also see Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans, 75 Fed. Reg. 64,910, 64,916–64,917 (Oct. 20, 2010). As the Northern Trust custom benchmark is not widely recognized and used, Plaintiffs do not reference the Northern Trust custom benchmark.

the Morningstar Lifetime Moderate Index, a measurement which Morningstar uses as the primary investment benchmark for each of the Northern Trust Funds.

46.     Morningstar classifies the Northern Trust Funds within the same Morningstar Category as the target date funds offered by Fidelity, T. Rowe Price, and Vanguard (collectively, the "Comparator Funds"). Each investment adviser for the Comparators Funds is an industry leader capable of providing target date strategies to large 401(k) plans like the Allstate Plan.

47.     The Northern Trust Funds have an abysmal record of underperformance relative to funds identified by Morningstar as comparable target date funds. The Northern Trust Funds occupy the bottom rung of their respective Morningstar Categories. Specifically, virtually all these Northern Trust Funds performed worse than between 70% and 90% of their peer funds over the preceding five (5) and ten (10) years. In fact, in the last ten (10) years, the Northern Trust Focus 2055 Fund performed worse than 100% of all the funds in its Morningstar category.

48.     Still, Allstate has failed to remove the Northern Trust Funds from the Plan. In 2017, Allstate even added the Northern Trust 2060 Fund to the Plan's mix. A reasonable investigation by the Allstate Defendants would have revealed the Funds' chronic underperformance and prompted Allstate to remove and replace them with superior options. The overall breadth and depth of the Northern Trust Funds' underperformance raises a plausible inference that Allstate's selection and monitoring process was tainted by a failure of competency or effort.

49.     In the Tables 1.a – 10a below, Plaintiff demonstrates the underperformance of the ten Northern Trust Funds compared to the MSCI ACWI IMI Index, the S&P Target Date Index, the Morningstar Lifetime Moderate Index, and the Comparator Funds from January 1, 2011 through December 31, 2014. In Tables 1.b – 10.b below, Plaintiff demonstrates the underperformance of the ten Northern Trust Funds compared to the same Comparator Funds on

both an annualized and cumulative basis for the period January 1, 2015 through November 30, 2020. In Tables 1.c – 10.c below, Plaintiff demonstrates the monetary impact of this underperformance by showing growth of a monetary investment in the Northern Trust Funds versus the growth of the same monetary investment in the Comparator Funds from January 1, 2015 through November 30, 2020. The data presented each of the Tables below was available to the Allstate Defendants throughout the Class Period in real-time.

50.     The Comparator Funds listed in each of the Tables below (Fidelity, T. Rowe Price, and Vanguard) pursue the same investment objectives as the Northern Trust Funds, are managed by well-known investment advisers, and are available to all large retirement plans. Allstate would not have had to scour the market to find them. On the contrary, the Northern Trust Funds' performance was so bad that Allstate would likely have had to scour the market to find offerings as poor-performing as the Northern Trust Funds.

51.     By selecting the Northern Trust Funds and then failing to remove them from the Plan, Allstate breached its fiduciary duty of prudence under ERISA. Allstate's decisions have had a profound and lasting effect on the Plan. Plan participants have lost upwards of $70 million in retirement savings since 2014.

### a.     Northern Trust Focus 2010 Fund

52.     The Plan has suffered from Northern Trust Focus 2010 Fund's abysmal underperformance since its introduction to the Plan. **Table 1.a** illustrates four-years of underperformance from inception leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 1.a**

January 1, 2011 – December 31, 2014

| Investment | Cumulative Return | Annualized Return |
|---|---|---|
| **NT Focus 2010 Fund - Tier W** | **26.53%** | **6.06%** |
| FIAM Blend Target Date 2010 S | 31.74% | 7.13% |
| **T. Rowe Price Ret Hybrid 2010 Tr-T1** | **32.88%** | **7.37%** |
| Vanguard Target Retirement 2010 Trust I | N/A[5] | N/A |
| **Morningstar Lifetime Mod 2010** | **31.07%** | **7.00%** |
| S&P Target Date 2010 | 28.52% | 6.47% |

53. Any prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 1.a** as benchmarks for the performance of the Northern Trust Focus 2010 Fund. Morningstar assigns the Morningstar Lifetime Moderate 2010 Index as the primary investment benchmark for the Northern Trust Focus 2010 Fund. Morningstar also places the Northern Trust Focus 2010 Fund in its Target Date 2010 Morningstar Category along with the Comparator Funds managed by Fidelity ("FIAM"), T. Rowe Price and Vanguard.

54. Despite four-years of substantial underperformance, the Allstate Defendants did not remove the Northern Trust Focus 2010 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

---

[5] Although Vanguard offered the Vanguard Target Retirement 2010 Trust as a collective investment trust to 401(k) plans, Vanguard discontinued its target date 2010 strategy in 2017, as its asset allocation became substantially identical to the Target Retirement Income Fund. Plaintiffs could not access Morningstar archived performance data for the Vanguard Target Retirement 2010 Trust.

55.    **Table 1.b** illustrates the underperformance of the Northern Trust Focus 2010 Fund from January 1, 2015 through November 30, 2020 on an annualized basis relative to Comparator Funds and benchmark indexes. Furthermore, the differences in annual performance are even more pronounced when viewed on a cumulative basis compounded over time. Thus, as **Table 1.b** demonstrates, the Northern Trust Focus 2010 Fund significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 1.b**

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | |
| Northern Trust Focus 2010 Fund W | -0.49% | 5.26% | 9.24% | -3.01% | 14.42% | 9.04% | 38.46% |
| FIAM Blend Target Date 2010 S | -0.37% | 6.77% | 11.70% | -3.04% | 14.84% | 8.51% | 43.59% |
| *+/- Northern Trust* | *-0.12%* | *-1.51%* | *-2.46%* | *+0.03%* | *-0.42%* | *+0.53%* | *-5.13%* |
| T. Rowe Price Ret Hybrid 2010 Tr-T1 | -0.41% | 6.78% | 12.12% | -3.54% | 15.71% | 10.04% | 46.42% |
| *+/- Northern Trust* | *-0.08%* | *-1.52%* | *-2.88%* | *+0.53%* | *-1.29%* | *-1.00%* | *-7.96%* |
| Morningstar Lifetime Mod 2010 | -1.58% | 6.64% | 10.19% | -2.97% | 14.93% | 9.41% | 41.12% |
| *+/- Northern Trust* | *+1.09%* | *-1.38%* | *-0.95%* | *-0.04%* | *-0.51%* | *-0.37%* | *-2.66%* |
| S&P Target Date 2010 | -0.21% | 5.82% | 9.95% | -3.10% | 14.30% | 7.93% | 38.78% |
| *+/- Northern Trust* | *-0.28%* | *-0.56%* | *-0.71%* | *+0.09%* | *+0.12%* | *+1.11%* | *-0.32%* |

<u>January 1, 2015 – November 30, 2020</u>

56.     Put in a broader context, according to Morningstar, as of November 30, 2020, within the Target Date 2010 Morningstar Category, the Northern Trust Focus 2010 Fund performed worse than 72% of all funds over the preceding 10-year period and worse than 57% of all funds over the preceding 5-year period. In those periods, there have been between 52 and 75 funds in the Target Date 2010 Morningstar Category.

57.     During the Class Period, the assets of the Northern Trust Focus 2010 Fund averaged approximately $9 million. **Table 1.c** demonstrates the financial significance of this underperformance by showing the growth of $9 million invested in the Northern Trust Focus 2010 Fund as compared to the growth of $9 million invested in each of the Comparator Funds from January 1, 2015 through November 30, 2020. As **Table 1.c** makes clear, Allstate's failure to replace the Northern Trust Focus 2010 Fund with one of these Comparator Funds by the end of 2014 resulted in the Plan losing between $.4 million and $.6 million in retirement savings.

**Table 1.c**

<u>January 1, 2015 – November 30, 2020</u>

| Fund Name | Compounded Performance | Annualized Performance | Growth of $9 Million |
|---|---|---|---|
| Northern Trust Focus 2010 Fund W | 38.46% | 5.65% | $12.4 million |
| FIAM Blend Target Date 2010 S | 43.59% | 6.31% | $12.9 million |
| *+/- Northern Trust* | *-5.13%* | *-0.66%* | *-$0.5 million* |
| T. Rowe Price Ret Hybrid 2010 Tr-T1 | 46.42% | 6.66% | $13.1 million |
| *+/- Northern Trust* | *-7.96%* | *-1.01%* | *-$0.7 million* |

### b. Northern Trust Focus 2015 Fund

58.     The Plan has suffered from Northern Trust Focus 2015 Fund's abysmal underperformance since its introduction to the Plan. **Table 2.a** illustrates four-years of underperformance from inception leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 2.a**

January 1, 2011 – December 31, 2014

| Investment | Cumulative Return | Annualized Return |
|---|---|---|
| **NT Focus 2015 Fund - Tier W** | **28.42%** | **6.45%** |
| FIAM Blend Target Date 2015 S | 33.52% | 7.50% |
| **T. Rowe Price Ret Hybrid 2015 Tr-T1** | **37.97%** | **8.38%** |
| Vanguard Target Retirement 2015 Trust I | 36.78% | 8.15% |
| **Morningstar Lifetime Mod 2015** | **33.81%** | **7.5%** |
| S&P Target Date 2015 | 32.53% | 7.29% |

59.     Any prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 2.a** as benchmarks for the performance of the Northern Trust Focus 2015 Fund. Morningstar assigns the Morningstar Lifetime Moderate 2015 Index as the primary investment benchmark for the Northern Trust Focus 2015 Fund. Morningstar also places the Northern Trust Focus 2015 Fund in its Target Date 2015 Morningstar Category along with the Comparator Funds managed by Fidelity ("FIAM"), T. Rowe Price and Vanguard.

60. Despite four-years of substantial underperformance, the Allstate Defendants did not remove the Northern Trust Focus 2015 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

61. **Table 2.b** illustrates the underperformance of the Northern Trust Focus 2015 Fund from January 1, 2015 through November 30, 2020 on an annualized basis relative to Comparator Funds and benchmark indexes. Furthermore, the differences in annual performance are even more pronounced when viewed on a cumulative basis compounded over time. Thus, as **Table 2.b** demonstrates, the Northern Trust Focus 2015 Fund significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 2.b**

January 1, 2015 – November 30, 2020

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | |
| Northern Trust Focus 2015 Fund W | -0.87% | 5.46% | 9.74% | -3.21% | 14.76% | 9.26% | 39.22% |
| FIAM Blend Target Date 2015 S | 0.00% | 7.27% | 13.55% | -4.02% | 17.06% | 9.38% | 49.69% |
| *+/- Northern Trust* | *-0.87%* | *-1.81%* | *-3.81%* | *+0.81%* | *-2.30%* | *-0.12%* | *-10.47%* |
| T. Rowe Price Ret Hybrid 2015 Tr-T1 | -0.36% | 7.39% | 13.95% | -3.99% | 17.34% | 10.38% | 51.63% |
| *+/- Northern Trust* | *-0.51%* | *-1.93%* | *-4.21%* | *+0.78%* | *-2.58%* | *-1.12%* | *-12.41%* |
| Vanguard Target Retirement 2015 Trust 1 | -0.39% | 6.28% | 11.56% | -2.94% | 14.91% | 8.31% | 42.67% |
| *+/- Northern Trust* | *-0.48%* | *-0.82%* | *-1.82%* | *-0.27%* | *-0.15%* | *+0.95%* | *-3.45%* |

| Morningstar Lifetime Mod 2015 | -1.73% | 7.10% | 11.39% | -3.54% | 16.29% | 10.13% | 44.84% |
|---|---|---|---|---|---|---|---|
| *+/- Northern Trust* | *+0.86%* | *-1.64%* | *-1.65%* | *+0.33%* | *-1.53%* | *-0.87%* | *-5.62%* |
| | | | | | | | |
| S&P Target Date 2015 | -0.16% | 6.56% | 11.39% | -3.67% | 15.40% | 7.99% | 42.26% |
| *+/- Northern Trust* | *-0.71%* | *-1.10%* | *-1.65%* | *+0.46%* | *-0.64%* | *+1.27%* | *-3.04%* |
| | | | | | | | |

62. Put in a broader context, according to Morningstar, as of November 30, 2020, within the Target Date 2015 Morningstar Category, the Northern Trust Focus 2015 Fund performed worse than 93% of all funds over the preceding 10-year period and worse than 86% of all funds over the preceding 5-year period. In those periods, there have been between 44 and 72 funds in the Target Date 2015 Morningstar Category.

63. During the Class Period, the assets of the Northern Trust Focus 2015 Fund averaged approximately $30 million. **Table 2.c** demonstrates the financial significance of this underperformance by showing the growth of $30 million invested in the Northern Trust Focus 2015 Fund as compared to the growth of $30 million invested in each of the Comparator Funds from January 1, 2015 through November 30, 2020. As **Table 2.c** makes clear, Allstate's failure to replace the Northern Trust Focus 2015 Fund with one of these Comparator Funds by the end of 2014 resulted in the Plan losing between $1.1 million and $3.4 million in retirement savings.

**Table 2.c**

January 1, 2015 – November 30, 2020

| Fund Name | Compounded Performance | Annualized Performance | Growth of $30 Million |
|---|---|---|---|
| Northern Trust Focus 2015 Fund W | 39.22% | 5.75% | $41.7 million |
| | | | |
| FIAM Blend Target Date 2015 S | 49.69% | 7.06% | $44.9 million |

| *+/- Northern Trust* | *-10.47%* | *-1.31%* | *-$3.2 million* |
|---|---|---|---|
| T. Rowe Price Ret Hybrid 2015 Tr-T1 | 51.63% | 7.29% | $45.1 million |
| *+/- Northern Trust* | *-12.41%* | *-1.54%* | *-$3.4 million* |
| Vanguard Target Retirement 2015 Trust 1 | 42.67% | 6.19% | $42.8 million |
| *+/- Northern Trust* | *-3.45%* | *-0.44%* | *-$1.1 million* |

### c. Northern Trust Focus 2020 Fund

64.     The Plan suffered from Northern Trust Focus 2020 Fund's abysmal underperformance since its introduction to the Plan. **Table 3.a** demonstrates that this Fund experienced four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 3.a**

January 1, 2011- December 31, 2014

| Investment | Cumulative Return % | Annualized Return % |
|---|---|---|
| **NT Focus 2020 Fund - Tier W** | **30.10%** | **6.80%** |
| FIAM Blend Target Date 2020 S | 35.56% | 7.90% |
| **T. Rowe Price Ret Hybrid 2020 Tr-T1** | **41.31%** | **9.03%** |
| Vanguard Target Retirement 2020 Trust I | 40.67% | 8.91% |
| **Morningstar Lifetime Mod 2020** | **36.95%** | **8.18%** |
| S&P Target Date 2020 | 35.96% | 7.98% |
| **MSCI ACWI IMI** | **37.53%** | **8.29%** |

21

65.     Any prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 3.a** as benchmarks for the performance of the Northern Trust Focus 2020 Fund. The Plan identifies the MSCI ACWI IMI as the benchmark index for the Northern Trust Focus 2020 Fund. Furthermore, Morningstar assigns the Morningstar Lifetime Moderate 2020 Index as the primary investment benchmark for the Northern Trust Focus 2020 Fund. Morningstar also places the Northern Trust Focus 2020 Fund in its Target Date 2020 Morningstar Category along with the Comparator Funds managed by Fidelity ("FIAM"), T. Rowe Price and Vanguard.

66.     Despite four-years of substantial underperformance, the Allstate Defendants did not remove the Northern Trust Focus 2020 Fund from the Plan. Predictably, the Fund continued underperforming throughout the Class Period.

67.     **Table 3.b** illustrates the underperformance of the Northern Trust Focus 2020 Fund from January 1, 2015 through November 30, 2020 on an annualized basis relative to Comparator Funds and benchmark indexes. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, **Table 3.b** demonstrates, the Northern Trust Focus 2020 Fund significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 3.b**

<u>January 1, 2015 – November 30, 2020</u>

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | |
| Northern Trust Focus 2020 Fund W | -1.27% | 5.76% | 10.71% | -3.64% | 15.52% | 9.17% | 40.48% |
| FIAM Blend Target Date 2020 | -0.22% | 7.54% | 14.82% | -4.76% | 18.84% | 10.24% | 53.73% |

| S | | | | | | | |
|---|---|---|---|---|---|---|---|
| +/- Northern Trust | -1.05% | -1.78% | -4.11% | +1.12% | -3.32% | -1.07% | -13.25% |
| | | | | | | | |
| T. Rowe Price Ret Hybrid 2020 Tr-T1 | -0.42% | 7.99% | 16.07% | -4.71% | 19.35% | 10.52% | 56.88% |
| +/- Northern Trust | -0.85% | -2.23% | -5.36% | +1.07% | -3.83% | -1.35% | -16.4% |
| | | | | | | | |
| Vanguard Target Retirement 2020 Trust 1 | -0.55% | 7.03% | 14.18% | -4.18% | 17.73% | 9.27% | 49.81% |
| +/- Northern Trust | -0.72% | -1.27% | -3.47% | +0.54% | -2.21% | -0.10% | -9.33% |
| | | | | | | | |
| Morningstar Lifetime Mod 2020 | -1.88% | 7.66% | 12.79% | -4.16% | 17.73% | 10.54% | 48.60% |
| +/- Northern Trust | +0.61% | -1.90% | -2.08% | +0.52% | -2.21% | -1.37% | -8.12% |
| | | | | | | | |
| S&P Target Date 2020 | -0.19% | 7.22% | 12.80% | -4.16% | 16.52% | 7.79% | 45.31% |
| +/- Northern Trust | -1.08% | -1.46% | -2.09% | +0.52% | -1.00% | +1.38% | -4.83% |
| | | | | | | | |
| MSCI ACWI IMI | -2.19% | 8.36% | 23.95% | -10.08% | 26.35% | 10.75% | 65.30% |
| +/- Northern Trust | +0.92% | -2.60% | -13.24% | +6.44% | -10.83% | -1.58% | -24.82% |

68.     Put in a broader context, according to Morningstar, as of November 30, 2020, within the Target Date 2020 Morningstar Category, the Northern Trust Focus 2020 Fund performed worse than 81% of all funds over the preceding 10-year period and worse than 79% of all funds over the preceding 5-year period. In those periods, there have been between 72 and 117 funds in the Target Date 2020 Morningstar Category.

69.     During the Class Period, the assets of the Northern Trust Focus 2020 Fund averaged approximately $115 million. **Table 3.c** shows the projected growth of $115 million invested in the Northern Trust Focus 2020 Fund and each of the comparator funds from January 1, 2015 through November 30, 2020. As **Table 3.c** makes clear, Allstate's failure to replace the Northern Trust

Focus 2020 Fund with one of these Comparator Funds at the end of 2014 resulted in the Plan losing between $10.7 million and $17.7 million in retirement savings.

**Table 3.c**

January 1, 2015 – November 30, 2020

| Fund Name | Compounded Performance | Annualized Performance | Growth of $115 Million |
|---|---|---|---|
| Northern Trust Focus 2020 Fund W | 40.48% | 5.91% | $161.5 million |
| FIAM Blend Target Date 2020 S | 53.73% | 7.54% | $176.7 million |
| *+/- Northern Trust* | *-13.25%* | *-1.63%* | *-$15.2 million* |
| T. Rowe Price Ret Hybrid 2020 Tr-T1 | 56.88% | 7.91% | $179.2 million |
| *+/- Northern Trust* | *-16.40%* | *-2.00%* | *-$17.7 million* |
| Vanguard Target Retirement 2020 Trust 1 | 49.81% | 7.07% | $172.2 million |
| *+/- Northern Trust* | *-9.33%* | *-1.16%* | *-$10.7 million* |

### d. Northern Trust Focus 2025 Fund

70. The Northern Trust Focus 2025 Fund's abysmal underperformance dates to its inception. **Table 4.a** demonstrates this Fund experienced four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 4.a**

January 1, 2011- December 31, 2014

| Investment | Cumulative Return % | Annualized Return % |
|---|---|---|
| **NT Focus 2025 Fund - Tier W** | **31.78%** | **7.14%** |
| FIAM Blend Target Date 2025 S | 40.15% | 8.81% |
| **T. Rowe Price Ret Hybrid 2025 Tr-T1** | **44.66%** | **9.67%** |

| | | |
|---|---|---|
| Vanguard Target Retirement 2025 Trust I | 43.33% | 9.42% |
| **Morningstar Lifetime Mod 2025** | **40.49%** | **8.87%** |
| S&P Target Date 2025 | 38.60% | 8.50% |
| **MSCI ACWI IMI** | **37.53%** | **8.29%** |

71.     Any prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 4.a** as benchmarks for the performance of the Northern Trust Focus 2025 Fund. Northern Trust identifies MSCI ACWI IMI Index as a benchmark for the Northern Trust Focus 2025 Fund. The Plan itself identifies the MSCI ACWI IMI as the benchmark index for the Northern Trust Focus 2025 Fund. Furthermore, Morningstar assigns the Morningstar Lifetime Moderate 2025 Index as the primary investment benchmark for the Northern Trust Focus 2025 Fund. Morningstar also places the Northern Trust Focus 2025 Fund in its Target Date 2025 Morningstar Category along with the Comparator Funds managed by Fidelity ("FIAM"), T. Rowe Price and Vanguard.

72.     Despite four-years of substantial underperformance, the Allstate Defendants did not remove the Northern Trust Focus 2025 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

73.     **Table 4.b** illustrates the underperformance of the Northern Trust Focus 2025 Fund from January 1, 2015 through November 30, 2020 on an annualized basis relative to Comparator Funds and benchmark indexes.  Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as **Table 4.b** demonstrates, the Northern Trust Focus 2025 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 4.b**

January 1, 2015 – November 30, 2020

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | |
| Northern Trust Focus 2025 Fund W | -1.86% | 6.31% | 12.42% | -4.35% | 16.86% | 9.64% | 44.02% |
| FIAM Blend Target Date 2025 S | -0.22% | 7.83% | 16.00% | -5.39% | 20.50% | 10.78% | 57.64% |
| *+/- Northern Trust* | *-1.64%* | *-1.52%* | *-3.58%* | *+1.04%* | *-3.64%* | *-1.14%* | *-13.62%* |
| T. Rowe Price Ret Hybrid 2025 Tr-T1 | -0.52% | 8.33% | 17.60% | -5.52% | 21.03% | 11.21% | 61.17% |
| *+/- Northern Trust* | *-1.34%* | *-2.02%* | *-5.18%* | *+1.17%* | *-4.17%* | *-1.57%* | *-17.15%* |
| Vanguard Target Retirement 2025 Trust 1 | -0.70% | 7.55% | 16.02% | -5.06% | 19.77% | 10.05% | 55.07% |
| *+/- Northern Trust* | *-1.16%* | *-1.24%* | *-3.60%* | *+0.71%* | *-2.91%* | *-0.41%* | *-11.05%* |
| Morningstar Lifetime Mod 2025 | -2.06% | 8.39% | 14.54% | -4.90% | 19.36% | 10.56% | 52.60% |
| *+/- Northern Trust* | *+0.20%* | *-2.08%* | *-2.12%* | *+0.55%* | *-2.50%* | *-0.92%* | *-8.58%* |
| S&P Target Date 2025 | -0.25% | 7.82% | 14.55% | -5.02% | 18.38% | 8.22% | 49.90% |
| *+/- Northern Trust* | *-1.61%* | *-1.51%* | *-2.13%* | *+0.67%* | *-1.52%* | *+1.42%* | *-5.88%* |
| MSCI ACWI IMI | -2.19% | 8.36% | 23.95% | -10.08% | 26.35% | 10.75% | 65.30% |
| *+/- Northern Trust* | *+0.33%* | *-2.05%* | *-11.53%* | *+5.73%* | *-9.49%* | *-1.11%* | *-21.28%* |

74.     Put in a broader context, according to Morningstar, as November 30, 2020, among the funds within the Target Date 2025 Morningstar Category, the Northern Trust Focus 2025 Fund performed worse than 81% of all funds over the preceding 10-year period, worse than 82% of all

funds over the preceding 5-year period, and worse than 52% of all funds over the preceding 3-year period. During those periods, there have been between 87 and 182 funds in the Target Date 2025 Morningstar Category.

75.     During the Class Period in 2014, the assets of the Northern Trust Focus 2025 Fund averaged approximately $110 million. **Table 4.c** shows the projected growth of $97 million invested in the Northern Trust Focus 2025 Fund and each of the comparator funds from January 1, 2015 through November 30, 2020. As **Table 4.c** makes clear, Allstate's failure to replace the Northern Trust Focus 2025 Fund with one of the Comparator Funds at the end of 2014 resulted in the Plan losing between $12.1 million and $18.8 million in retirement savings.

**Table 4.c**

<u>January 1, 2015 – November 30, 2020</u>

| Fund Name | Compounded Performance | Annualized Performance | Growth of $110 Million |
|---|---|---|---|
| Northern Trust Focus 2025 Fund W | 44.02% | 6.36% | $158.4 million |
| | | | |
| FIAM Target Blend 2025 S | 57.64% | 8.00% | $173.4 million |
| *+/- Northern Trust* | *-13.62%* | *-1.64%* | *-$15 million* |
| | | | |
| T. Rowe Price Ret Hybrid 2025 Tr-T1 | 61.17% | 8.40% | $177.2 million |
| *+/- Northern Trust* | *-17.15%* | *-2.04%* | *-$18.8 million* |
| | | | |
| Vanguard Target Retirement 2025 Trust 1 | 55.07% | 7.70% | $170.5 million |
| *+/- Northern Trust* | *-11.05%* | *-1.34%* | *-$12.1 million* |

### e.  Northern Trust Focus 2030 Fund

76.     The Northern Trust Focus 2030 Fund's underperformance dates to its inception. **Table 5.a** illustrates four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 5.a**

January 1, 2011- December 31, 2014

| Investment | Cumulative Return % | Annualized Return % |
|---|---|---|
| **NT Focus 2030 Fund - Tier W** | **33.59**% | **7.51**% |
| FIAM Blend Target Date 2030 S | 42.06% | 9.17% |
| **T. Rowe Price Ret Hybrid 2030 Tr-T1** | **47.55**% | **10.21**% |
| Vanguard Target Retirement 2030 Trust I | 46.10% | 9.94% |
| **Morningstar Lifetime Mod 2030** | **43.66**% | **9.48**% |
| S&P Target Date 2030 | 41.08% | 8.99% |
| **MSCI ACWI IMI** | **37.53**% | **8.29**% |

77. Any prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 5.a** as benchmarks for the performance of the Northern Trust Focus 2030 Fund. Northern Trust identifies MSCI ACWI IMI Index as a benchmark for the Northern Trust Focus 2030 Fund. The Plan identifies the MSCI ACWI IMI as the benchmark index for the Northern Trust Focus 2030 Fund. Furthermore, Morningstar assigns the Morningstar Lifetime Moderate 2030 Index as the primary investment benchmark for the Northern Trust Focus 2030 Fund. Morningstar also places the Northern Trust Focus 2030 Fund in its Target Date 2030 Morningstar Category along with the Comparator Funds managed by Fidelity ("FIAM"), T. Rowe Price and Vanguard.

78. Despite four-years of substantial underperformance, the Allstate Defendants did not remove the Northern Trust Focus 2030 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

79. **Table 5.b** illustrates the underperformance of the Northern Trust Focus 2030 Fund from January 1, 2015 through November 30, 2020 on an annualized basis relative to Comparator

Funds and benchmark indexes. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as **Table 5.b** demonstrates, the Northern Trust Focus 2030 Fund also significantly underperformed benchmark indexes and the Comparator Funds on a cumulative basis.

**Table 5.b**

January 1, 2015 – November 30, 2020

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | |
| Northern Trust Focus 2030 Fund W | -2.09% | 7.31% | 15.67% | -5.73% | 19.40% | 9.60% | 49.93% |
| FIAM Blend Target Date 2030 S | -0.45% | 8.51% | 18.79% | -6.54% | 23.10% | 11.36% | 64.39% |
| *+/- Northern Trust* | *-1.64%* | *-1.20%* | *-3.12%* | *+0.81%* | *-3.70%* | *-1.76%* | *-14.46%* |
| T. Rowe Price Ret Hybrid 2030 Tr-T1 | -0.58% | 8.75% | 19.22% | -6.15% | 22.62% | 11.85% | 65.92% |
| *+/- Northern Trust* | *-1.51%* | *-1.44%* | *-3.55%* | *+0.42%* | *-3.22%* | *-2.25%* | *-15.99%* |
| Vanguard Target Retirement 2030 Trust 1 | -0.91% | 7.93% | 17.61% | -5.77% | 21.18% | 10.41% | 58.57% |
| *+/- Northern Trust* | *-1.18%* | *-0.62%* | *-1.94%* | *+0.04%* | *-1.78%* | *-0.81%* | *-8.64%* |
| Morningstar Lifetime Mod 2030 | -2.30% | 9.26% | 16.59% | -5.82% | 21.24% | 10.14% | 56.52% |
| *+/- Northern Trust* | *+0.21%* | *-1.95%* | *-0.92%* | *+0.09%* | *-1.84%* | *-0.54%* | *-6.59%* |
| S&P Target Date 2030 | -0.30% | 8.35% | 16.19% | -5.99% | 20.38% | 8.41% | 53.97% |
| *+/- Northern Trust* | *-1.79%* | *-1.04%* | *-0.52%* | *+0.26%* | *-0.98%* | *+1.19%* | *-4.04%* |
| MSCI ACWI IMI | -2.19% | 8.36% | 23.95% | -10.08% | 26.35% | 10.75% | 65.30% |
| *+/- Northern Trust* | *+0.10%* | *-1.05%* | *-8.28%* | *+4.35%* | *-6.95%* | *-1.15%* | *-15.37%* |

80.     Put in a broader context, according to Morningstar, as of November 30, 2020, within the Target Date 2030 Morningstar Category, the Northern Trust Focus 2030 Fund performed worse than 77% of all the fund over the preceding 10-year period, worse than 62% of all funds over the preceding 5-year period, and worse than 56% of all funds over the preceding 3-year period. During those periods, there have been between 89 and 192 funds in the Target Date 2030 Morningstar Category.

81.     During the Class Period, the assets of the Northern Trust Focus 2030 Fund averaged approximately $80 million. **Table 5.c** shows the projected growth of $80 million invested in the Northern Trust Focus 2030 Fund and each of the Comparator Funds from January 1, 2015 through November 30, 2020. As **Table 5.c** makes clear, Allstate's failure to replace the Northern Trust Focus 2030 Fund with one of the Comparator Funds at the end of 2014 resulted in the Plan losing upwards between $6.9 and $12.8 million in retirement savings.

**Table 5.c**

January 1, 2015 – November 30, 2020

| Fund Name | Compounded Performance | Annualized Performance | Growth of $80 Million |
|---|---|---|---|
| Northern Trust Focus 2030 Fund W | 49.93% | 7.08% | $119.9 million |
| | | | |
| FIAM Blend Target Date 2030 S | 64.39% | 8.76% | $131.5 million |
| *+/- Northern Trust* | *-14.46%* | *-1.68%* | *-$11.6 million* |
| | | | |
| T. Rowe Price Ret Hybrid 2030 Tr-T1 | 65.92% | 8.93% | $132.7 million |
| *+/- Northern Trust* | *-15.99%* | *-1.85%* | *-$12.8 million* |
| | | | |
| Vanguard Target Retirement 2030 Trust 1 | 58.57% | 8.10% | $126.8 million |
| *+/- Northern Trust* | *-8.64%* | *-1.02%* | *-$6.9 million* |

### f. Northern Trust Focus 2035 Fund

82.     The Northern Trust Focus 2035 Fund's underperformance dates to its inception. **Table 6.a** illustrates four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 6.a**

January 1, 2011- December 31, 2014

| Investment | Cumulative Return % | Annualized Return % |
|---|---|---|
| **NT Focus 2035 Fund - Tier W** | **35.14**% | **7.82**% |
| FIAM Blend Target Date 2035 S | 44.95% | 9.72% |
| **T. Rowe Price Ret Hybrid 2035 Tr-T1** | **49.43**% | **10.56**% |
| Vanguard Target Retirement 2035 Trust I | 48.74% | 10.43% |
| **Morningstar Lifetime Mod 2035** | **45.56**% | **9.84**% |
| S&P Target Date 2035 | 43.26% | 9.40% |
| **MSCI ACWI IMI** | **37.53**% | **8.29**% |

83.     Any prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 6.a** as benchmarks for the performance of the Northern Trust Focus 2035 Fund. Northern Trust identifies MSCI ACWI IMI Index as a benchmark for the Northern Trust Focus 2035 Fund. The Plan identifies the MSCI ACWI IMI as the benchmark index for the Northern Trust Focus 2035 Fund. Furthermore, Morningstar assigns the Morningstar Lifetime Moderate 2035 Index as the primary investment benchmark for the Northern Trust Focus 2035 Fund. Morningstar also places the Northern Trust Focus 2035 Fund in its Target Date 2035 Morningstar Category along with the Comparator Funds managed by Fidelity ("FIAM"), T. Rowe Price and Vanguard.

84.     Despite four-years of substantial underperformance, the Allstate Defendants did not remove the Northern Trust Focus 2035 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

85.     **Table 6.b** illustrates the underperformance of the Northern Trust Focus 2035 Fund from January 1, 2015 through November 30, 2020 on an annualized basis relative to Comparator Funds and benchmark indexes. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as the **Table 6.b** demonstrates, the Northern Trust Focus 2035 Fund also significantly underperformed the benchmark indexes and Comparator Funds a cumulative basis.

**Table 6.b**

<u>January 1, 2015 – November 30, 2020</u>

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | |
| Northern Trust Focus 2035 Fund W | -2.50% | 8.30% | 18.95% | -7.43% | 22.84% | 8.48% | 54.92% |
| FIAM Blend Target Date 2035 S | -0.52% | 8.94% | 20.86% | -7.83% | 26.04% | 12.10% | 70.57% |
| *+/- Northern Trust* | *-1.98%* | *-0.64%* | *-1.91%* | *-0.40%* | *-3.20%* | *-3.62%* | *-15.65%* |
| T. Rowe Price Ret Hybrid 2035 Tr-T1 | -0.63% | 9.01% | 20.52% | -6.66% | 23.97% | 12.23% | 69.52% |
| *+/- Northern Trust* | *-1.87%* | *-0.71%* | *-1.57%* | *+0.77%* | *-1.13%* | *-3.75%* | *-14.6%* |
| Vanguard Target Retirement 2035 Trust 1 | -1.09% | 8.35% | 19.22% | -6.52% | 22.58% | 10.75% | 62.14% |
| *+/- Northern Trust* | *-1.41%* | *-0.05%* | *-0.27%* | *+0.91%* | *+0.26%* | *-2.27%* | *-7.22%* |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Morningstar Lifetime Mod 2035 TR | -2.58% | 10.07% | 18.52% | -6.82% | 23.04% | 9.30% | 59.27% |
| *+/- Northern Trust* | *+0.08%* | *-1.77%* | *+0.43%* | *+0.61%* | *-0.20%* | *-0.82%* | *-4.35%* |
| S&P Target Date 2035 | -0.35% | 8.85% | 17.78% | -6.88% | 22.18% | 8.73% | 58.04% |
| *+/- Northern Trust* | *-2.15%* | *-0.55%* | *+1.17%* | *+0.55%* | *+0.66%* | *-0.25%* | *-3.12%* |
| MSCI ACWI IMI | -2.19% | 8.36% | 23.95% | -10.08% | 26.35% | 10.75% | 65.30% |
| *+/- Northern Trust* | *-0.31%* | *-0.06%* | *-5.00%* | *-2.65%* | *-3.51%* | *-2.27%* | *-10.38%* |

86.     Put in a broader context, according to Morningstar, as of November 30, 2020, within the Target Date 2035 Morningstar Category, the Northern Trust Focus 2035 Fund performed worse than 83% of all the fund over the preceding 10-year period, worse than 57% of all funds over the preceding 5-year period, and worse than 70% of all funds over the preceding 3-year period. During those periods, there have been between 84 and 179 funds in the Target Date 2035 Morningstar Category.

87.     During the Class Period, the assets of the Northern Trust Focus 2035 Fund averaged approximately $60 million.  **Table 6.c** shows the projected growth of $45 million invested in the Northern Trust Focus 2035 Fund and each of its Comparator Funds from January 1, 2015 through November 30, 2020. As **Table 6.c** makes clear, Allstate's failure to replace the Northern Trust Focus 2035 Fund with one of the Comparator Funds at the end of 2014 resulted in the Plan losing between approximately $4.3 million and $9.4 million in retirement savings.

**Table 6.c**

January 1, 2015 – November 30, 2020

| Fund Name | Compounded Performance | Annualized Performance | Growth of $60 Million |
|---|---|---|---|
| Northern Trust Focus 2035 Fund W | 54.92% | 7.68% | $92.9 million |
| FIAM Blend Target Date 2035 S | 70.57% | 9.44% | $102.3 million |
| *+/- Northern Trust* | *-15.65%* | *-1.76%* | *-$9.4 million* |
| T. Rowe Price Ret Hybrid 2035 Tr-T1 | 69.52% | 9.33% | $101.7 million |
| *+/- Northern Trust* | *-14.60%* | *-1.65%* | -$8.8 million |
| Vanguard Target Retirement 2035 Trust 1 | 62.14% | 8.51% | $97.2 million |
| *+/- Northern Trust* | *-7.22%* | *-0.83%* | -$4.3 million |

**g. Northern Trust Focus 2040 Fund**

88. The Northern Trust Focus 2040 Fund's abysmal underperformance dates to its inception. **Table 7.a** illustrates four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 7.a**

January 1, 2011- December 31, 2014

| Investment | Cumulative Return % | Annualized Return % |
|---|---|---|
| **NT Focus 2040 Fund - Tier W** | **36.34**% ` | **8.06**% |

| | | |
|---|---|---|
| FIAM Blend Target 2040 S | 45.31% | 9.79% |
| **T. Rowe Price Ret Hybrid 2040 Tr-T1** | **50.71**% | **10.80**% |
| Vanguard Target Retirement 2040 Trust I | 50.65% | 10.79% |
| **Morningstar Lifetime Mod 2040** | **45.96**% | **9.91**% |
| S&P Target Date 2040 | 44.80% | 9.70% |
| **MSCI ACWI IMI** | **37.53**% | **8.29**% |

89. Any prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 7.a** as benchmarks for the performance of the Northern Trust Focus 2040 Fund. Northern Trust identifies MSCI ACWI IMI Index as a benchmark for the Northern Trust Focus 2040 Fund. The Plan itself identifies the MSCI ACWI IMI as the benchmark index for the Northern Trust Focus 2040 Fund. Furthermore, Morningstar assigns the Morningstar Lifetime Moderate 2040 Index as the primary investment benchmark for the Northern Trust Focus 2040 Fund. Morningstar also places the Northern Trust Focus 2040 Fund in its Target Date 2040 Morningstar Category along with the Comparator Funds managed by Fidelity ("FIAM"), T. Rowe Price and Vanguard.

90. Despite three-years of substantial underperformance, the Allstate Defendants did not remove the Northern Trust Focus 2040 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

91. **Table 7.b** illustrates the underperformance of the Northern Trust Focus 2040 Fund from January 1, 2015 through November 30, 2020 on an annualized basis relative to Comparator Funds and benchmark indexes. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as **Table 7.b**. demonstrates, the Northern Trust

Focus 2040 Fund also significantly underperformed the benchmark indexes and Comparator Funds

on a cumulative basis.

**Table 7.b**

January 1, 2015 – November 30, 2020

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | |
| Northern Trust Focus 2040 Fund W | -2.96% | 8.59% | 19.95% | -8.20% | 23.87% | 8.43% | 55.86% |
| FIAM Blend Target Date 2040 S | -0.52% | 8.99% | 21.06% | -8.38% | 27.02% | 12.65% | 72.07% |
| *+/- Northern Trust* | *-2.44%* | *-0.40%* | *-1.11%* | *+0.18%* | *-3.15%* | *-4.22%* | *-16.21%* |
| T. Rowe Price Ret Hybrid 2040 Tr-T1 | -0.57% | 9.17% | 21.49% | -7.06% | 25.09% | 12.67% | 72.77% |
| *+/- Northern Trust* | *-2.39%* | *-0.58%* | *-1.54%* | *-1.14%* | *-1.22%* | *-4.24%* | *-16.91%* |
| Vanguard Target Retirement 2040 Trust 1 | -1.44% | 8.80% | 20.82% | -7.27% | 23.97% | 11.00% | 65.30% |
| *+/- Northern Trust* | *-1.52%* | *-0.21%* | *-0.84%* | *-0.93%* | *-0.10%* | *-2.57%* | *-9.44%* |
| Morningstar Lifetime Mod 2040 | -2.83% | 10.61% | 19.87% | -7.65% | 24.35% | 8.56% | 60.60% |
| *+/- Northern Trust* | *-0.13%* | *-2.02%* | *+0.08%* | *-0.55%* | *-0.48%* | *-0.13%* | *-4.74%* |
| S&P Target Date 2040 | -0.40% | 9.23% | 18.87% | -7.41% | 23.37% | 8.91% | 60.87% |
| *+/- Northern Trust* | *-2.56%* | *-0.64%* | *+1.08%* | *-0.79%* | *+0.50%* | *-0.48%* | *-5.01%* |
| MSCI ACWI IMI | -2.19% | 8.36% | 23.95% | -10.08% | 26.35% | 10.75% | 65.30% |
| *+/- Northern Trust* | *-0.77%* | *+0.23%* | *-4.00%* | *+1.88%* | *-2.48%* | *-2.32%* | *-9.44%* |

92.     Put in a broader context, according to Morningstar, as of November 30, 2020, within the Target Date 2040 Morningstar Category, the Northern Trust Focus 2040 Fund performed worse than 83% of all the fund over the preceding 10-year period, worse than 61% of all funds over the preceding 5-year period, and worse than 70% of all funds over the preceding 3-year period. During those periods, there have been between 89 and 192 funds in the Target Date 2040 Morningstar Category.

93.     During the Class Period, the assets of the Northern Trust Focus 2040 Fund averaged approximately $30 million. **Table 7.c** shows the projected growth of $30 million invested in the Northern Trust Focus 2040 Fund and each of the Comparator Funds from January 1, 2015 through November 30, 2020. As **Table 7.c** makes clear, Allstate's failure to replace the Northern Trust Focus 2040 Fund with one of the Comparator Funds at the end of 2014 resulted in the Plan losing between $2.9 and $5.1 million in lost savings.

**Table 7.c**

January 1, 2015 – November 30, 2020

| Fund Name | Compounded Performance | Annualized Performance | Growth of $30 Million |
|---|---|---|---|
| Northern Trust Focus 2040 Fund W | 55.86% | 7.79% | $46.7 million |
| | | | |
| FIAM Blend Target Date 2040 S | 72.07% | 9.61% | $51.6 million |
| *+/- Northern Trust* | *-16.21%* | *-1.82%* | *-$4.9 million* |
| | | | |
| T. Rowe Price Ret Hybrid 2040 Tr-T1 | 72.77% | 9.68% | $51.8 million |
| *+/- Northern Trust* | *-16.91%* | *-1.89%* | *-$5.1 million* |
| | | | |
| Vanguard Target Retirement 2040 Trust 1 | 65.30% | 8.87% | $49.6 million |
| *+/- Northern Trust* | *-9.44%* | *-1.08%* | *-$2.9 million* |

37

### h. Northern Trust Focus 2045 Fund

94.     The Northern Trust Focus 2045 Fund's abysmal underperformance dates to its inception.  **Table 8.a** illustrates four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

**Table 8.a**

January 1, 2011- December 31, 2014

| Investment | Cumulative Return % | Annualized Return % |
|---|---|---|
| **NT Focus 2045 Fund - Tier W** | **36.41%** | **8.07%** |
| FIAM Blend Target Date 2045 S | 46.33% | 9.98% |
| **T. Rowe Price Ret Hybrid 2045 Tr-T1** | **50.71%** | **10.80%** |
| Vanguard Target Retirement 2045 Trust I | 50.73% | 10.80% |
| **Morningstar Lifetime Mod 2045** | **45.26%** | **9.78%** |
| S&P Target Date 2045 | 45.99% | 9.92% |
| **MSCI ACWI IMI** | **37.53%** | **8.29%** |

95.     Any prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 8.a** as benchmarks for the performance of the Northern Trust Focus 2045 Fund. Northern Trust identifies MSCI ACWI IMI Index as a benchmark for the Northern Trust Focus 2045 Fund. The Plan itself identifies the MSCI ACWI IMI as the benchmark index for the Northern Trust Focus 2045 Fund. Furthermore, Morningstar assigns the Morningstar Lifetime Moderate 2045 Index as the primary investment benchmark for the Northern Trust Focus 2045 Fund. Morningstar

also places the Northern Trust Focus 2045 Fund in its Target Date 2045 Morningstar Category along with the Comparator Funds managed by Fidelity ("FIAM"), T. Rowe Price and Vanguard.

96.      Despite four-years of substantial underperformance, the Allstate Defendants did not remove the Northern Trust Focus 2045 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

97.      **Table 8.b** illustrates the underperformance of the Northern Trust Focus 2045 Fund from January 1, 2015 through November 30, 2020 on an annualized basis. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as **Table 8.b** demonstrates, the Northern Trust Focus 2045 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 8.b**

January 1, 2015 – November 30, 2020

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | |
| Northern Trust Focus 2045 Fund W | -2.95% | 8.57% | 19.79% | -8.13% | 23.73% | 8.49% | 55.66% |
| FIAM Blend Target Date 2045 S | -0.60% | 9.02% | 21.03% | -8.34% | 27.01% | 12.64% | 72.00% |
| *+/- Northern Trust* | *-2.35%* | *-0.45%* | *-1.24%* | *+0.21%* | *-3.28%* | *-4.15%* | *-16.34%* |
| T. Rowe Price Ret Hybrid 2045 Tr-T1 | -0.63% | 9.24% | 21.96% | -7.36% | 25.79% | 12.84% | 74.09% |
| *+/- Northern Trust* | *-2.32%* | *-0.67%* | *-2.17%* | *-0.77%* | *-2.06%* | *-4.35%* | *-18.43%* |
| Vanguard Target Retirement 2045 Trust 1 | -1.47% | 8.94% | 21.52% | -7.86% | 25.10% | 11.29% | 67.33% |
| *+/- Northern Trust* | *-1.48%* | *-0.37%* | *-1.73%* | *-0.27%* | *-1.37%* | *-2.80%* | *-11.67%* |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Morningstar Lifetime Mod 2045 | -3.03% | 10.84% | 20.53% | -8.17% | 24.97% | 8.12% | 60.75% |
| +/- Northern Trust | +0.08% | -2.27% | -0.74% | +0.04% | -1.24% | +0.37% | -5.09% |
| | | | | | | | |
| S&P Target Date 2045 | -0.46% | 9.54% | 19.56% | -7.74% | 24.02% | 8.98% | 62.54% |
| +/- Northern Trust | -2.49% | -0.97% | +0.23% | -0.39% | -0.29% | -0.49% | -6.88% |
| | | | | | | | |
| MSCI ACWI IMI | -2.19% | 8.36% | 23.95% | -10.08% | 26.35% | 10.75% | 65.30% |
| +/- Northern Trust | -0.76% | +0.21% | -4.16% | +1.95% | -2.62% | -2.26% | -9.64% |

98.     Put in a broader context, according to Morningstar, as of the November 30, 2020, within the Target Date 2045 Morningstar Category, the Northern Trust Focus 2045 Fund performed worse than 95% of all the fund over the preceding 10-year period, worse than 75% of all funds over the preceding 5-year period, and worse than 76% of all funds over the preceding 3-year period. During those periods, there have been between 83 and 179 funds in the Target Date 2045 Morningstar Category.

99.     During the Class Period, the assets of the Northern Trust Focus 2045 Trust Fund averaged approximately $30 million. **Table 8.c** shows the projected growth of $30 million invested in the Northern Trust Focus 2045 Fund and each of the comparator funds from January 1, 2015 through November 30, 2020. As **Table 8.c** makes clear, Allstate's failure to replace the Northern Trust Focus 2045 Fund with one of the Comparator Funds in 2014 resulted in the Plan losing between approximately $3.5 million and $5.5 million in retirement savings.

**Table 8.c**

January 1, 2015 – November 30, 2020

| Fund Name | Compounded Performance | Annualized Performance | Growth of $30 Million |
|---|---|---|---|
| Northern Trust Focus 2045 Fund W | 55.66% | 7.77% | $46.7 million |
| | | | |

| FIAM Blend Target Date 2045 S | 72.00% | 9.60% | $51.6 million |
|---|---|---|---|
| *+/- Northern Trust* | *-16.34%* | *-1.83%* | *-$4.9 million* |
| | | | |
| T. Rowe Price Ret Hybrid 2045 Tr-T1 | 74.09% | 9.82% | $52.2 million |
| *+/- Northern Trust* | *-18.43%* | *-2.05%* | *-$5.5 million* |
| | | | |
| Vanguard Target Retirement 2045 Trust 1 | 67.33% | 9.09% | $50.2 million |
| *+/- Northern Trust* | *-11.67%* | *-1.32%* | *-$3.5 million* |

### i. Northern Trust Focus 2050 Fund

100.    The Northern Trust Focus 2050 Fund's abysmal underperformance dates to its inception.  **Table 9.a** illustrates four-years of underperformance leading up to the Class Period, relative to benchmark indexes and Comparator Funds.

### Table 9.a

### January 1, 2011- December 31, 2014

| Investment | Cumulative Return % | Annualized Return % |
|---|---|---|
| **NT Focus 2050 Fund - Tier W** | **36.44%** | **8.08**% |
| FIAM Blend Target Date 2050 S | 45.90% | 9.90% |
| **T. Rowe Price Ret Hybrid 2050 Tr-T1** | **50.71%** | **10.80**% |
| Vanguard Target Retirement 2050 Trust I | 50.88% | 10.83% |
| **Morningstar Lifetime Mod 2050** | **44.34**% | **9.61**% |
| S&P Target Date 2050 | N/A* | N/A* |
| **MSCI ACWI IMI** | **37.53**% | **8.29**% |

*Not yet created in January 2011

101.    Any prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 9.a** as benchmarks for the performance of the Northern Trust Focus 2050 Fund. The Plan identifies MSCI ACWI IMI Index as a benchmark for the Northern Trust Focus 2050 Fund. Furthermore, Morningstar assigns the Morningstar Lifetime Moderate 2050 Index as the primary investment benchmark for the Northern Trust Focus 2050 Fund. Morningstar also places the Northern Trust Focus 2050 Fund in its Target Date 2050 Morningstar Category along with the Comparator Funds managed by Fidelity ("FIAM"), T. Rowe Price and Vanguard.

102.    Despite four-years of substantial underperformance, the Allstate Defendants did not remove the Northern Trust Focus 2050 Fund from the Plan. Predictably, the underperformance continued throughout the Class Period.

103.    **Table 9.b** illustrates the underperformance of the Northern Trust Focus 2050 Trust from January 1, 2015 through November 30, 2020 on an annualized basis relative to Comparator Funds and benchmark indexes. Furthermore, the differences in annual performance are even pronounced when compounded over time. Thus, as **Table 9.b** demonstrates, the Northern Trust Focus 2050 Trust also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 9.b**

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | |
| Northern Trust Focus 2050 Fund W | -2.96% | 8.55% | 19.61% | -8.03% | 23.59% | 8.43% | 55.27% |
| | | | | | | | |
| FIAM Blend Target Date 2050 S | -0.60% | 9.01% | 21.06% | -8.41% | 27.06% | 12.61% | 71.90% |
| *+/- Northern Trust* | *-2.36%* | *-0.46%* | *-1.45%* | *+0.38%* | *-3.47%* | *-4.18%* | *-16.63%* |

| T. Rowe Price Ret Hybrid 2050 Tr-T1 | -0.63% | 9.29% | 21.91% | -7.35% | 25.79% | 12.82% | 74.07% |
| *+/- Northern Trust* | *-2.33%* | *-0.74%* | *-2.30%* | *-0.68%* | *-2.20%* | *-4.39%* | *-18.80%* |
| Vanguard Target Retirement 2050 Trust 1 | -1.53% | 8.96% | 21.48% | -7.82% | 25.07% | 11.42% | 67.44% |
| *+/- Northern Trust* | *-1.43%* | *-0.41%* | *-1.87%* | *-0.21%* | *-1.48%* | *-2.99%* | *-12.17%* |
| Morningstar Lifetime Mod 2050 | -3.19% | 10.89% | 20.78% | -8.41% | 25.09% | 7.94% | 60.34% |
| *+/- Northern Trust* | *+0.23%* | *-2.34%* | *-1.17%* | *+0.38%* | *-1.50%* | *+0.49%* | *-5.07%* |
| S&P Target Date 2050 | -0.47% | 9.74% | 20.18% | -7.94% | 24.35% | 9.05% | 63.87% |
| *+/- Northern Trust* | *-2.49%* | *-1.19%* | *-0.57%* | *-0.09%* | *-0.76%* | *-0.62%* | *-8.60%* |
| MSCI ACWI IMI | -2.19% | 8.36% | 23.95% | -10.08% | 26.35% | 10.75% | 65.30% |
| *+/- Northern Trust* | *-0.77%* | *+0.19%* | *-4.34%* | *+2.05%* | *-2.76%* | *-2.32%* | *-10.03%* |

<u>January 1, 2015 – November 30, 2020</u>

104.     Put in a broader context, according to Morningstar, as of November 30, 2020, within the Target Date 2050 Morningstar Category, the Northern Trust Focus 2050 Fund performed worse than 90% of all the fund over the preceding 10-year period, worse than 77% of all funds over the preceding 5-year period, and worse than 73% of all funds over the preceding 3-year period. During those periods, there have been between 79 and 192 funds in the Target Date 2050 Morningstar Category.

105.     During the Class Period, the assets of the Northern Trust Focus 2050 Fund averaged approximately $25 million. **Table 9.c** shows the projected growth of $25 million invested in the Northern Trust Focus 2050 Fund and each of the comparator funds from January 1, 2015 through November 30, 2020. As **Table 9.c** makes clear, Allstate's failure to replace the Northern Trust

Focus 2050 Fund with one of the Comparator Funds in 2014 resulted in the Plan losing between approximately $3 million and $4.7 million in retirement savings.

**Table 9.c**

January 1, 2015 – November 30, 2020

| Fund Name | Compounded Performance | Annualized Performance | Growth of $25 Million |
|---|---|---|---|
| Northern Trust Focus 2050 Fund W | 55.27% | 7.72% | $38.8 million |
| FIAM Blend Target Date 2050 S | 71.90% | 9.59% | $42.9 million |
| *+/- Northern Trust* | *-16.63%* | *-1.87%* | *-$4.1 million* |
| T. Rowe Price Ret Hybrid 2050 Tr-T1 | 74.07% | 9.82% | $43.5 million |
| *+/- Northern Trust* | *-18.80%* | *-2.10%* | *-$4.7 million* |
| Vanguard Target Retirement 2050 Trust 1 | 67.44% | 9.10% | $41.8 million |
| *+/- Northern Trust* | *-12.17%* | *-1.38%* | *-$3.0 million* |

**i. Northern Trust Focus 2055 Fund**

106.    The Northern Trust Focus 2055 Fund's abysmal underperformance dates to its inception. **Table 10.a** illustrates four-years of underperformance leading up to the Class Period, relative to a benchmark index and Comparator Funds.

**Table 10.a**

January 1, 2011- December 31, 2014

| Investment | Cumulative Return % | Annualized Return % |
|---|---|---|
| **NT Focus 2055 Fund - Tier W** | **36.53**% | **8.09**% |
| FIAM Blend Target Date 2055 S | N/A* | N/A* |
| **T. Rowe Price Ret Hybrid 2055 Tr-T1** | **50.57**% | **10.77**% |

| | | |
|---|---|---|
| Vanguard Target Retirement 2055 Trust I | 50.96% | 10.84% |
| **Morningstar Lifetime Mod 2055** | **43.25**% | **9.40**% |
| S&P Target Date 2055 | N/A* | N/A* |
| **MSCI ACWI IMI** | **37.53**% | **8.29**% |

*Not yet created in January 2011

107.    Any prudent fiduciary would have used the indexes and Comparator Funds listed in **Table 10.a** as benchmarks for the performance of the Northern Trust Focus 2050 Fund. The Plan identifies MSCI ACWI IMI Index as a benchmark for the Northern Trust Focus 2055 Fund. Furthermore, Morningstar assigns the Morningstar Lifetime Moderate 2055 Index as the primary investment benchmark for the Northern Trust Focus 2055 Fund. Morningstar also places the Northern Trust Focus 2055 Fund in its Target Date 2055 Morningstar Category along with the Comparator Funds managed by Fidelity ("FIAM"), T. Rowe Price and Vanguard.

108.    Despite four-years of substantial underperformance, the Allstate Defendants did not remove the Northern Trust Focus 2055 Fund from the Plan.  Predictably, the underperformance continued throughout the Class Period.

109.    **Table 10.b** illustrates the underperformance of the Northern Trust Focus 2055 Fund from January 1, 2015 through November 30, 2020 on an annualized basis relative to Comparator Funds and benchmark indexes. Furthermore, the differences in annual performance are even pronounced when compounded over time. As **Table 10.b** demonstrates, the Northern Trust Focus 2055 Fund also significantly underperformed the benchmark indexes and Comparator Funds on a cumulative basis.

**Table 10.b**

January 1, 2015 – November 30, 2020

| Fund | Annualized Performance | | | | | | Cumulative Compounded Performance |
|---|---|---|---|---|---|---|---|
| | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | |
| Northern Trust Focus 2055 Fund | -2.92% | 8.53% | 19.42% | -7.97% | 23.44% | 8.52% | 55.11% |
| FIAM Blend Target Date 2055 S | -0.64% | 9.04% | 21.09% | -8.38% | 27.03% | 12.63% | 71.98% |
| *+/- Northern Trust* | *-2.28%* | *-0.51%* | *-1.67%* | *+0.41%* | *-3.59%* | *-4.11%* | *-16.87%* |
| T. Rowe Price Ret Hybrid 2055 Tr-T1 | -0.63% | 9.26% | 21.94% | -7.33% | 25.78% | 12.82% | 74.10% |
| *+/- Northern Trust* | *-2.29%* | *-0.73%* | *-2.52%* | *-0.64%* | *-2.34%* | *-4.30%* | *-18.99%* |
| Vanguard Target Retirement 2055 Trust 1 | -1.63% | 8.98% | 21.48% | -7.83% | 25.09% | 11.41% | 67.29% |
| *+/- Northern Trust* | *-1.29%* | *-0.46%* | *-2.06%* | *-0.14%* | *-1.65%* | *-2.89%* | *-12.18%* |
| Morningstar Lifetime Mod 2055 | -3.34% | 10.90% | 20.95% | -8.57% | 25.05% | 7.87% | 59.91% |
| *+/- Northern Trust* | *+0.42%* | *-2.37%* | *-1.53%* | *+0.60%* | *-1.61%* | *+0.65%* | *-4.80%* |
| S&P Target Date 2055 | -0.54% | 9.94% | 20.48% | -7.97% | 24.48% | 8.99% | 64.48% |
| *+/- Northern Trust* | *-2.38%* | *-1.41%* | *-1.06%* | *0.00%* | *-1.04%* | *-0.47%* | *-9.37%* |
| MSCI ACWI IMI | -2.19% | 8.36% | 23.95% | -10.08% | 26.35% | 10.75% | 65.30% |
| *+/- Northern Trust* | *-0.73%* | *+0.17%* | *-4.53%* | *+2.11%* | *-2.91%* | *-2.23%* | *-10.19%* |

110.    Put in a broader context, according to Morningstar, as of November 30, 2020, within the Target Date 2055 Morningstar Category, the Northern Trust Focus 2055 Fund performed worse than 100% of all the funds over the preceding 10-year period, worse than 81%

of all funds over the preceding 5-year period, and worse than 76% of all funds over the preceding 3-year period. During those periods, there have been between 40 and 179 funds in the Target Date 2055 Morningstar Category.

111.     During the Class Period, the assets of the Northern Trust Focus 2055 Fund averaged approximately $25 million. **Table 10.c** shows the projected growth of $20 million invested in the Northern Trust Focus 2055 Fund and each of the Comparator Funds from January 1, 2015 through November 30, 2020. As **Table 10.c** makes clear, Allstate's failure to replace the Northern Trust Focus 2055 Fund with one of the Comparator Funds in 2014 resulted in the Plan losing between approximately $3.1 million and $4.8 million in retirement savings.

**Table 10.c**

January 1, 2015 – November 30, 2020

| Fund Name | Compounded Performance | Annualized Performance | Growth of $25 Million |
|---|---|---|---|
| Northern Trust Focus 2055 Trust W | 55.11% | 7.70% | $38.7 million |
| | | | |
| FIAM Target Blend 2055 S | 71.98% | 9.60% | $43.0 million |
| +/- Northern Trust | -16.87% | -1.90% | -$4.3 million |
| | | | |
| T. Rowe Price Ret Hybrid 2055 Tr-T1 | 74.10% | 9.82% | $43.5 million |
| +/- Northern Trust | -18.99% | -2.12% | -$4.8 million |
| | | | |
| Vanguard Target Retirement 2055 Trust 1 | 67.29% | 9.09% | $41.8 million |
| +/- Northern Trust | -12.18% | -1.39% | -$3.1 million |

**j.  Allstate Allowed Financial Engines and AFA to Charge Unreasonable Fees to Participants**

112.     Throughout the Class Period, Allstate has allowed Financial Engines and Alight Financial Advisors (AFA) to offer investment advisory services to plan participants through two

mechanisms. First, through the "Professional Management" program, where Financial Engines, and later AFA, charge an asset-based fee to assume discretionary authority over a Plan participant's account to make investment decisions. Second, through the "Online Advice" program, where Financial Engines, and later AFA, charge a flat fee of an undisclosed amount to all participants for the ability to access advice regarding investment recommendations.

### a. Allstate Allowed Financial Engines and AFA to Charge Unreasonable Investment Advisory Fees to Participants for the Professional Management Program

113.    From the beginning of the Class Period through sometime in 2017, Financial Engines offered investment advisory services directly to plan participants who opted into the Financial Engines Professional Management program.   In 2017, Allstate replaced Financial Engines with AFA to provide investment advisory services to the Plan. AFA then hired Financial Engines to provide it with sub-advisory services.

114.    According to AFA's Form ADV Part 2[6], AFA relies exclusively on the proprietary software, systems, and methodology developed and maintained by Financial Engines to provide investment advisory and related management services. Accordingly, the switch from Financial Engines to AFA was a cosmetic change that did nothing to alter the investment processes or methodology used to provide the Plan and its participants with investment advice.

115.    Financial Engines is registered with the Securities and Exchange Commission ("SEC") as an investment adviser. In SEC filings, Financial Engines has told the public that unlike

---

[6] Form ADV is the uniform form used by investment advisers to register with both the SEC and state securities authorities. The form consists of two parts which contain information about an investment adviser and its business operations. Part 2 is the primary disclosure document for investment advisers and must be delivered to advisory clients. Form ADV contains information about an investment adviser and its business operation.

traditional advisory services, their advisory services do not rely on the subjective evaluation of each plan participant's portfolio by a human.[7] In the investment advisory industry, Financial Engines is referred to as a "robo adviser," which means that a robot uses mathematical formulas to pick an investment portfolio for the investor.

116.     Financial Engines' portfolios are not custom-made for each participant in the Allstate Plan. Instead, Financial Engines uses largely standardized portfolios, each carrying a different combination of investment strategy and risk. Financial Engines places each participant into one of these cookie-cutter portfolios based on the participant's age, self-reported investment strategy, and self-reported risk tolerance.  Once the participant engages Financial Engines, the participant loses the ability to direct his or her retirement strategy—only Financial Engines can make changes to the participant's portfolio. Typically, there is no human interaction with the participant.

117.     Financial Engines operates in a highly competitive industry.  In SEC filings, Financial Engines has identified a number of firms and products with whom Financial Engines competes for plan participants' business. The firms identified include Morningstar, ProManage, GuidedChoice, Fidelity, Vanguard, Charles Schwab & Co., and Merrill Lynch. Financial Engines also identifies competition from substitute investment products, most notably target-date retirement funds offered by Vanguard and T. Rowe Price.[8]

---

[7]  Financial Engines, Inc. Annual Report on Form 10K, p.6 (December 31, 2017) https://www.sec.gov/Archives/edgar/data/1430592/000156459018002889/fngn-10k_20171231.htm
[8] *Id,* p. 12

118.    Financial Engines and AFA made millions of dollars each year in investment advisory fees. According to Allstate's Form 5500s, plan participants paid Financial Engines and AFA the following total annual investment advisory fees from 2015 through 2019:

| Year | Total Investment Advisory Fee to Financial Engines |
|------|---------------------------------------------------|
| 2015 | $1,265,509 |
| 2016 | $1,514,150 |
| 2017 | $1,790,503 |
| 2018 | $2,218,477 |
| 2019 | $2,667,972 |

119.    Throughout Financial Engines' tenure, Allstate allowed Financial Engines to charge unreasonable investment advisory fees. Following Financial Engines replacement by AFA, Allstate has allowed AFA to charge unreasonable investment advisory fees.

120.    AFA charges participants based on a tiered fee structure, with the highest fees impacting those with the least retirement savings. AFA's current fee schedule is:

| Annual Fee | Portion of Account Balance |
|------------|----------------------------|
| 0.45% | First $100,000 |
| 0.30% | Next $100,000 to $250,000 |
| 0.25% | Amounts above $250,000 |

121.    Upon information and belief, Financial Engines charged participants even higher fees.

122.    Financial Engines and AFA have done almost nothing to earn these fees. Since Financial Engine simply offers a robo-advisory service with largely standardized portfolios, its costs are minimal. AFA's costs are also minimal since it merely contracts with Financial Engines to provide "sub-advisory" services to Plan participants.

123.    Moreover, Financial Engines' and AFA's costs are fixed per participant. The size of the participant's account (whether its $1,000, $100,000, or $1,000,000) does not alter Financial Engines' or AFA's internal costs. But Financial Engines and AFA do not charge a flat fee per

participant. Rather, they charge each participant an asset-based fee, meaning the fee is based on a percentage of the participant's total 401(k) account value. As a result, the more money a participant invests, the more money Financial Engines and AFA make, even though no additional services have been rendered. Since Financial Engines' and AFA's costs are not affected by the size of participants' accounts, Financial Engines' and AFA's asset-based fees have no reasonable relation to the services rendered and results in participants overpaying for investment advisory services.

124.    Further, Financial Engines' and AFA's fees are excessive compared to similar, substitute investment products available on the market. Financial Engines (and AFA, by hiring Financial Engines as a "sub-advisor") essentially perform services no more complicated than a standard target date fund, which allocates assets among equity securities (e.g., stocks), fixed income securities (e.g., bonds), and cash based on a person's age and expected retirement date. The fees for target date funds typically range from 0.07% for a target date fund managed by Vanguard to 0.10% for a target date fund managed by Fidelity to 0.12% for a target date fund managed by BlackRock. Thus, participants are paying Financial Engines and AFA a fee that is between **300%** and **600%** more than they would for the comparable services of target date funds. Accordingly, Allstate offered participants investment advisory services (first Financial Engines, and then AFA) that were both expensive and redundant.

125.    Financial Engines and AFA also fare poorly when compared to a wide array of other comparable investment options. For example, various investment advisers offer "global portfolios" that construct investment strategies with similar asset allocations to the portfolios Financial Engines builds for Allstate Plan participants for a significantly lower fee. For instance, Wilshire Associates, an investment adviser with $70 billion in assets under management, offers

asset allocation, life cycle and target retirement date investment programs. However, Wilshire's investment advisory fee ranges from 0.5% to 0.25%.

126.     Financial Engines also charges more than non-robotic investment advisory services. Pacific Investment Management Company, LLC (PIMCO), one of the country's largest investment management firms, hires Research Affiliates to make recommendations about the allocation of mutual fund assets within PIMCO's All Assets Fund and All Asset Authority Fund. Much like Financial Engines, the PIMCO Research Affiliates make their recommendations by selecting investments from a defined universe of available funds. PIMCO pays Research Affiliates about .15% of assets under management – significantly less than the asset-based fees that Financial Engines and AFA charge Plan participants.

127.     Financial Engines and AFA even charge more than other robo-advisors. For instance, ProManage, charges 0.10% to retirement plans with assets exceeding $100 million. Vanguard's Personal Advisor Services charges 0.30% for robo-advisory services. Another robo-advisor competitor, GuidedChoice, charges retirement plans 0.25% for building participants' portfolios and managing them over time. Charles Schwab's Intelligent Advisory hybrid service charges 0.28%.

**b. Allstate Allowed Financial Engines and AFA to Charge Unreasonable Fees to Participants for the Online Advice Program**

128.     Throughout the Class Period, Allstate has included an "Online Advice" program on the Plan. From the beginning of the Class Period through some time in 2017, Financial Engines provided these Online Advice investment advisory services. Beginning in 2017, when Allstate replaced Financial Engines, AFA provided the Online Advice service to the Plan.

129.     Participants do not opt-into the Online Advice program. Instead, Plan participants have the option to access the Online Advice feature to see the investment advice and

recommendations from Financial Engines, and later AFA, has provided. To utilize the advice and recommendations provided through Online Advice, the Participant must first navigate through the Plan portal, and then it is up to the Participant to review the information and determine whether and when to implement all or some portion of the recommendations.

130.    While Allstate bills this service as one for which there is no additional charge in its messaging to participants, in reality all Plan participants are charged fees and expenses for this online investment advisory service as part of the Plan's "administrative expenses," regardless of whether the participant actually uses the Online Advice investment advisory feature.

### c.  By Retaining Financial Engines and AFA, Allstate Introduced an Unnecessary Layer of Fees

131.    Although participants paid an investment advisory fee for the Professional Management and Online Advice services offered by Financial Engines (and now, to AFA), each of the funds on the Plan has been managed by a separate investment adviser that charges its own investment advisory fees (e.g., State Street Global Advisors, Invesco). That means Plan participants had to pay Financial Engines' (now AFA's) advisory fees *in addition to* the advisory fees that participants paid indirectly to other investment advisers that manage the funds in the Plan (e.g., State Street Global Advisors and Invesco). These layered advisory services drove up (and continue to drive up) participants' total fees.

132.    Adding insult to injury, Financial Engines passed through a significant portion of its investment advisory fees to the Plan's recordkeeper Alight Solutions, LLC (formerly Hewitt Associates). Financial Engines passed through between 25% to 35% of the Professional Management fees, and 25% of the Online Advice fees to the Plan's recordkeeper, amounting to a kickback of hundreds-of-thousands of dollars each year.

133.    This kickback was not paid in exchange for any additional investment advisory services to Plan participants and thereby unreasonably increased the Plan participants' investment advisory fees. Instead, on information and belief, these fees were passed through from Financial Engines to the Plan's recordkeeper in exchange for Hewitt's agreement to feature Financial Engines exclusively, and not promote or offer the services of other investment advisory service providers to its clients, such as Allstate. The result of this pay-to-play arrangement was the financial enrichment of the Plan's recordkeeper at the expense of Plan participants.

134.    Allstate left this inefficient and imprudent fee structure largely intact when it replaced Financial Engines with AFA in 2017. Notably, AFA, the entity that began providing the same investment advisory services in 2017, is the wholly owned subsidiary of the Plan's recordkeeper, Alight Solutions. Although now formally the Plan's "investment adviser," AFA merely subcontracts with Financial Engines to perform the actual investment advisory work.

### d. Allstate Failed to Monitor Financial Engines' and AFA's Compensation and Services

135.    As a fiduciary to the Plan, Allstate was required to monitor the activities of Financial Engines and later AFA. As part of this duty to monitor investment advisers, the Allstate Defendants at a minimum are expected to monitor the quality of the services offered, the reasonableness of the fees charged for the service, the utilization of the investment advice services by the participants in relation to the cost of the services to the plan, as well as participant comments and complaints about the quality of the furnished advice. However, at no time did anyone from Allstate survey participants to determine whether Financial Engines' robotic investment advisory services and minimal trading activity were in Plan participants' best interest relative to the overall fees being charged.

136.    Allstate also allowed Financial Engines and AFA to charge fees that were out of line with comparable investment advisory services. Financial Engines and AFA charge participants significantly more than other robo-advisors. They also charge more than target date funds despite providing participants with substantially similar services. A prudent fiduciary would have investigated and provided participant these cheaper alternatives or negotiated with Financial Engines for lower fees.

137.    Accordingly, from the beginning of the Class Period through the date of Financial Engines replacement, Allstate failed to monitor properly Financial Engines' compensation in light of the limited services that Financial Engines provided. Following Financial Engines' replacement, Allstate failed to monitor properly AFA's compensation in light of the limited services AFA provided. Allstate thus caused the participants to pay unreasonable advisory fees, resulting in millions of dollars of damages each year.

138.    Moreover, Allstate imprudently developed a plan with too many layers of fees, resulting in unreasonable total fees for investment advisory, recordkeeping, and administrative services combined. For participants who signed up for Financial Engines (and later, for AFA), the total fees were so high as to make it extremely difficult to break even on their investments.

### e. Allstate's Breaches of Fiduciary Duty Will Have a Profound and Lasting Effect on Participants' Retirement Accounts

139.    In defined contribution plans, such as Allstate's Plan, fees paid by the plan participant negatively impact the total return on the participant's investments. Retirement savings in defined-contribution plans grow and compound over the course of a participant's career, meaning excessive fees can drastically reduce the total amount available to a participant at the time of retirement. Due to the power of compounding over time, what appear to be minor differences

in fee amounts yield dramatically different outcomes in the funds available to the participant at the time of retirement.

140.    The Department of Labor ("DOL") illustrates this phenomenon:

Assume that you are an employee with 35 years until retirement and a current 401(k) account balance of $25,000. If returns on investments in your account over the next 35 years average 7 percent and fees and expenses reduce your average returns by 0.5 percent, your account balance will grow to $227,000 at retirement, even if there are no further contributions to your account. If fees and expenses are 1.5 percent, however, your account balance will grow to only $163,000. The 1 percent difference in fees and expenses would reduce your account balance at retirement by 28 percent.

141.    According to a February 15, 2014 report by *The Atlantic*, a mere 1.25% difference in fees can reduce a participant's returns by more than six figures over the course of that participant's career.[9] The study notes the different results not just from money lost paying a higher fee, but also from money that will never be invested because it went to fees instead.[10]

142.    Given the potential impact fees have on plan returns, the DOL has issued guidance to plan fiduciaries clarifying the fiduciary duty of prudence as it relates to fees.

Plan fees and expenses are important consideration for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.[11]

---

[9] *Crushingly Expensive Mistake Killing Your Retirement*, The Atlantic (Feb. 15, 2014), https://www.theatlantic.com/business/archive/2014/02/thecrushinglyexpensive-mistake-killing-your-retirement/283866

[10] *Id.*

[11] *Understanding Retirement Plan Fees and Expenses*, U.S. Dep't of Labor Employee Benefits Security Admin. (Dec. 2011), https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/understanding-retirement-plan-fees-and-expenses.pdf.

143.     As a result of Allstate's imprudent and disloyal selection and retention of Financial Engines and AFA, plan participants have suffered dramatic losses to their retirement accounts. Unless remedied, these losses will compound over time, adding new injuries on top of those already suffered.

## VII.    CLASS ACTION ALLEGATIONS

144.     29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109(a).

145.     In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3), Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Specifically, Plaintiff seeks to certify, and to be appointed as representatives of, the following classes:

     a.   **Northern Trust Class**: All participants and beneficiaries of the Plan from January 4, 2015 through the date of judgment, excluding the Defendants, who were invested in the Northern Trust Focus Funds.

     b.   **Investment Advisory Class**: All participants and beneficiaries of the Plan, excluding the Defendants, who paid fees for Financial Engines' or AFA's for investment advisory services at any time from January 4, 2015 through the date of judgment.

146.     This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

     a.   The Class includes tens-of-thousands of members and is so large that joinder of all its members is impracticable.

b. There are questions of law and fact common to this Class because the Allstate Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions and omissions alleged herein as to the Plan and not as to any individual participant. Thus, questions of law and fact common to the Classes include, *inter alia*, the following: (1) who are the fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); (2) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by employing an imprudent process for monitoring and evaluating Plan investment options; (3) whether the Plaintiff's claims of an imprudent process require similar inquiries and proof of the claims and therefore implicate the same set of concerns for all proposed members of the Class; (4) what are the losses to the Plan resulting from each breach of fiduciary duty; and, (5) what Plan-wide equitable and other relief the court should impose in light of the Allstate Defendants' breach of duty.

c. Plaintiff's claims are typical of the claims of the Class because each Plaintiff was a participant during the time period at issue in this action and all participants in the Plan were harmed by the Allstate Defendants' misconduct.

d. Plaintiff is an adequate representative of the Class because she was a participant in the Plan during the Class Period, has no interest that conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent attorneys to represent the Class.

147. Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Allstate Defendants in respect to the

discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a). Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

148.    Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because the Allstate Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Plaintiff seeks reformation of the Plan to make it a more viable retirement investment option, which will benefit them and other Plan participants.

149.    Additionally, or in the alternative, this action may be certified as a class under Rule 23(b)(3). A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and it is impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

150.    Additionally, or alternatively, this action may be certified as to particular issues under Rule 23(c)(4)—including but not limited to the Allstate Defendants' liability to the class for their allegedly imprudent conduct.

151.    Plaintiff's counsel, Sanford Heisler Sharp, LLP will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## VIII.   CAUSES OF ACTION

### COUNT I

**Breach of Duty of Prudence by Failing to Remove Imprudent Investments from the Plan During the Class Period**

**(Violation of ERISA, 29 U.S.C. § 1104)**
**(Against All Allstate Defendants)**

152.    The allegations set forth in the Complaint are realleged and incorporated herein by reference.

153.    Allstate used the Plan as a strategic and financial benefit to recruit and retain workers.

154.    In joining Allstate and subsequently enrolling in the Plan, employees trusted and relied on Allstate's resources and expertise to construct and maintain a state-of-the-art 401(k) plan.

155.    At all relevant times during the Class Period, the Allstate Defendants acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) by exercising authority and control with respect to the management of the Plan and its assets.

156.    29 U.S.C. § 1104(a)(1)(B) requires a plan fiduciary to act with the "care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

157.    Thus, the scope of the fiduciary duties and responsibilities of the Allstate Defendants includes administering the Plan with the care, skill, diligence, and prudence required by ERISA. Allstate Defendants are responsible for evaluating and monitoring the Plan's

investments on an ongoing basis, eliminating imprudent investments, and taking all necessary steps to ensure the Plan's assets are invested prudently.

158.    The Allstate Defendants had an imprudent process for investigating, evaluating and monitoring investments. The faulty process resulted in a plan loaded with target date funds—the Northern Trust Funds—that have exhibited chronic poor performance for almost a decade. Allstate Defendants failed to remove the Northern Trust Funds despite their historical underperformance relative to other target date collective investment trusts and relevant benchmark indexes.

159.    By failing to adequately consider better-performing investment products for the Plan, the Allstate Defendants failed to discharge their duties with the care, skill, prudence, and diligence that a prudent fiduciary acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

160.    Allstate's breach of fiduciary duty has substantially impaired the Plan's use, its value, and its investment performance for Plan participants.

161.     As a direct and proximate result of the Allstate Defendants' breaches of fiduciary duty, the Plan and each of its participants who invested in the Funds have suffered millions of dollars of damages and lost-opportunity costs which continue to accrue and for which the Allstate Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

162.    Each of the Allstate Defendants is liable to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count and are subject to other equitable or remedial relief as appropriate.

163.     Each Allstate Defendant also participated in the breach of the other Allstate Defendants, knowing that such acts were a breach, enabled the other Allstate Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, and knew of the breach by the other Allstate Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Allstate Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

## COUNT II

### Breach of Duties of Prudence by Retaining Financial Engines and AFA to Provide Investment Advisory Services to Plan Participants

### (Violation of ERISA, 29 U.S.C. § 1104)
### (Against All Defendants)

164.     The allegations set forth in the Complaint are realleged and incorporated herein by reference.

165.     Defendants failed to engage in a prudent process for retaining an investment adviser to construct asset allocation portfolios for participants.

166.     Allstate retained Financial Engines and AFA to construct investment portfolios for participants even though cheaper asset allocation investment options (e.g., target date funds or other investment advisers) provide substantially similar services for a reduced price. Allstate knew or should have known that retention of Financial Engines and AFA would result in participants paying duplicative and much higher investment advisory fees, thereby resulting in added expense and significant underperformance for participants. Allstate's retention of Financial Engines and AFA caused the participants to pay significantly excessive investment advisory fees and suffer poor relative performance.

167.     In failing to adequately consider cheaper investment advisory services for participants, Allstate Defendants failed to discharge their duties with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

168.    Allstate Defendants allowed Financial Engines and AFA to receive asset-based investment advisory fees but failed to monitor those payments and the services provided to ensure that Financial Engines and AFA received only reasonable compensation for the investment advisory services provided to the participants. As the amount of assets grew, the investment advisory fees paid to Financial Engines and AFA grew, even though the services provided by Financial Engines and AFA remained the same. This caused the investment advisory compensation paid to Financial Engines and AFA to exceed a reasonable fee for the services provided.

169.    Allstate Defendants also allowed Financial Engines and AFA to receive investment advisory fees from all participants for the Online Advice program without regard for whether the participant ever actually utilized the service. In failing to consider the utilization of the online investment advice services in relation to the per-participant cost for such services, Allstate Defendants failed to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

170.    By failing to monitor the services provided by Financial Engines and AFA to ensure that the fees Financial Engines and AFA received were reasonable relative to services provided, Allstate Defendants' breached their duty of prudence.

171.    As a direct and proximate result of these breaches of fiduciary duties, the Plan and each of its participants have suffered millions of dollars of damages which continue to accrue and

for which Allstate Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

172.     Each Allstate Defendant is personally liable under 29 U.S.C. §1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count and is subject to other equitable or remedial relief as appropriate.

173.     Each Defendant participated in the breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. §1105(a).

## COUNT III

### Prohibited Transactions
### (Violation of 29 U.S.C. § 1106)
### (Against All Defendants)

174.     Plaintiff restates and incorporates the allegations contained in the Complaint.

175.     Allstate Defendant's hiring of Financial Engines and AFA, and the payment of unreasonable fees to Financial Engines and AFA, constitute prohibited transaction under 29 U.S.C. § 1106.

176.     By causing the Plan to deliver Plan assets to Financial Engines and AFA, Defendants caused the Plan to engage in transactions that they knew or should have known constituted exchanges of property between the Plan and a party in interest in violation of 29 U.S.C. § 1106(a)(1)(A).

177.     By causing the Plan to use Financial Engines and AFA to provide services to the Plan and its participants and by causing the Plan to pay Plan assets to Financial Engines and AFA, Defendants caused the Plan to engage in transactions they knew or should have known constituted

the furnishing of services between the Plan and a party in interest in violation of 29 U.S.C. § 1106(a)(1)(C).

178.    By causing the Plan to deliver Plan assets to Financial Engines and AFA, Defendants caused the Plan to engage in transactions that they knew or should have known constituted a transfer of Plan assets to a party in interest in violation of 29 U.S.C. § 1106(a)(1)(D).

179.    The compensation arrangement between Financial Engines and the Plan's recordkeeper amounted to a transaction dealing with the assets of the Plan in the interest of the Plan's recordkeeper, a fiduciary to the Plan, in violation of 29 U.S.C. § 1106(b)(1). This arrangement further amounted to a transaction involving the assets of the Plan whereby the Plan's recordkeeper received consideration for its own personal account from a party dealing with the Plan in violation of 29 U.S.C. § 1106(b)(3).

180.    By causing the Plan to engage in transactions that Defendants knew or should have known would result in the transfer of Plan assets from Financial Engines to the Plan's recordkeeper, a party in interest, Defendants acted in violation of 29 U.S.C. § 1106(a)(1)(D). Further, Defendants had knowledge of this transaction pursuant to the disclosure requirements of ERISA Section 408(b)(2), yet Defendants made no reasonable efforts to remedy the breach. Accordingly, Defendants are liable for the breach of the fiduciary responsibility of its recordkeeper, another fiduciary with respect to the Plan, pursuant to 29 U.S.C. § 1105(a)(3).

181.    As a direct result of these prohibited transactions, Defendants caused the Plan to suffer loses in the reduction of Plan assets and the lost investment returns on those assets.

## COUNT IV

### Failure to Monitor

### (Against All Allstate Defendants)

182.     Plaintiff restates and incorporate the allegations contained in the Complaint.

183.     The Allstate Defendants had a duty to monitor the performance of each individual to whom they delegated any fiduciary responsibilities.

184.     A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

185.     To the extent any of the Allstate Defendant's fiduciary responsibilities were delegated to another fiduciary, the Allstate Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

186.     The Allstate Defendants breached their fiduciary monitoring duties by, among other things:

   a.   failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and omissions with respect to the Plan;

   b.   failing to monitor their appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

   c.   failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that the Funds were prudent; and

     d.   failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plan to the detriment of Plan participants' retirement savings.

187.    Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

     a.   failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of its appointees' imprudent actions and omissions with respect to the Plan;

     b.   failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

     c.   failing to implement a process to ensure that the appointees monitored the performance of Plan investments; and

     d.   failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plan, all to the detriment of Plan participants' retirement savings.

188.    As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had Allstate and the other delegating fiduciaries prudently discharged their fiduciary monitoring duties, the Plan would not have suffered these losses.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

i) find and adjudge that the Allstate Defendants have breached their fiduciary duties, as described in the Complaint above;

ii) find and adjudge that the Allstate Defendants are personally liable to make good to the Plan $70,000,000 in losses resulting from each breach of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

iii) find and adjudge that the Allstate Defendants are liable to the Plan for appropriate equitable relief, including but not limited to restitution and disgorgement;

iv) determine the method by which Plan losses under 29 U.S.C. § 1109(a) should be calculated;

v) order the Allstate Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C.§ 1109(a);

vi) remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

vii) surcharge against the Allstate Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive, and/or in violation of ERISA;

viii) reform the Plan to include only prudent investments;

ix) certify the Class, appoint the Plaintiff as a class representative, and appoint Sanford Heisler Sharp LLP as Class Counsel;

x) award to the Plaintiff and the Class their attorney's fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine; order the payment of interest to the extent it is allowed by law; and

xi) grant other equitable or remedial relief as the Court deems appropriate.

Dated: January 4, 2021

Respectfully Submitted,

By: /s/ Erich P. Schork

Ben Barrow
Erich P. Schork
Anthony L. Parkhill
**BARNOW AND ASSOCIATES, P.C**.
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Phone: (312) 621-2000
Facsimile: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
aparkhill@barnowlaw.com

 *David Sanford
*Alexandra Harwin
*David Tracey
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, NY 10019
Phone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
aharwin@sanfordheisler.com
dtracey@sanfordheisler.com

*Kevin H. Sharp
*Leigh Anne St. Charles
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Phone: (615) 434-7000
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com
lstcharles@sanfordheisler.com

*Charles Field
**SANFORD HEISLER SHARP, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4242

Facsimile: (619) 577-4250
cfield@sanfordheisler.com

*Attorneys for Plaintiff Mary Ellen Morgan*

*\*Pro hac vice forthcoming*